Ernest COLEMAN, Plaintiff,

v.

GREYHOUND LINES, INC. and Amalgamated Transit Union, Local 1150, Defendants.

No. 83 C 3106.

United States District Court, N.D. Illinois, E.D.

Jan. 8, 1984.

J.A. Walker, Chicago, Ill., for plaintiff.

Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendants.

---

**3.** Had counsel offered an explanation of his failure to comply with the requirements of Rule 25(a)(1) amounting to excusable neglect, this Court, in its discretion, might have construed the instant motion for substitution as implying a motion for enlargement of time under Rule 6(b)(2). Absent *any* explanation, we are not at liberty to do so.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ernest Coleman ("Coleman") brings this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e–17) and under 42 U.S.C. § 1981,[1] charging both Greyhound Lines, Inc. ("Greyhound") and Amalgamated Transit Union, Local 1150 ("Union") with race discrimination[2] in Greyhound's termination of Coleman's employment and Union's failure adequately to process his resulting grievances. Coleman's Complaint was filed May 4, 1983[3] and Greyhound was served May 27, but Union was not served until October 31. Union now moves to dismiss under Fed.R.Civ.P. ("Rule") 4(j). For the reasons stated in this memorandum opinion and order, Union's motion is granted.

Rule 4(j), which took effect February 26, provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

Service on Union was made 60 days after expiration of Rule 4(j)'s 120-day period. That fact calls the Rule's second level inquiry into play: whether Coleman has shown "good cause" for the lack of timely service.

1. Coleman's Complaint ¶ 2 also asserts his claim is based on the Thirteenth Amendment, though neither count of the Complaint explains how the Amendment is implicated. This opinion need not deal with any of the conceptual problems that purported claim poses.

2. Coleman is black (Complaint ¶ 4).

3. All events relevant to this motion occurred in 1983, so the rest of this opinion will omit any year designation.

4. Siegel, *Practice Commentary on Amendment of Federal Rule 4 (eff. Feb. 26, 1983) with*

Coleman's only "good cause" submission (Mem. 1) says he changed lawyers, and his new counsel (who appeared of record July 12) did not discover the "inadvertent" non-service until an August 24 deposition. Coleman's new lawyer assertedly exercised "due diligence" in obtaining service after that: The summons was filed September 13 but service was not actually completed until October 31 (Mem. 1 refers to "two (2) attempts to serve [Union])."

Because Rule 4(j) is so new, this Court writes on an entirely clean slate. Neither party cites any authority. Research by this Court's law clerk and this Court itself has panned no gold: not a single decided case, only one commentator who has written on the Rule's perils,[4] and a legislative history that provides only a single (and most obvious) illustration of "good cause"—the putative defendant's "evasion of service." 128 Cong.Rec. H 9849, H 9852 n. 25 (daily ed. Dec. 15, 1982) (section-by-section analysis of the 1982 amendments to the Rules, submitted by Rep. Edwards).

In this case the reasons advanced as "good cause" are really no cause at all. As for the 69 days of inaction from May 4 to July 12, prior counsel's so-called "inadvertence" is precisely the factor the Rule was aimed at. Its entire focus was to force plaintiffs' (more realistically their lawyers') diligence in order to preserve causes of action against limitations problems. *Id.* at H 9851. And even if it were assumed Coleman's new lawyer is not to be charged with constructive knowledge of the delinquency before he actually learned of the non-service on August 24,[5] eight days then still

*Special Statute of Limitations Precautions,* 96 F.R.D. 88, 90, 101–15 (1983).

5. This Court need not decide that question for *the reason next discussed in the text.* It may be noted, though, that the legislative history consistently speaks of the *plaintiff* and the *plaintiff's* diligence, not that of his lawyer. And it is familiar law that even the most drastic consequences may be visited on a party for his lawyer's inaction. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

remained to effect service within the Rule 4(j) limit. There is no hint of any reason timely service could not then have been obtained.[6] If that were in fact a problem, Coleman had available to him—but did not file—a Rule 6(b) motion to extend the time period (that procedure is specifically referred to in the legislative history: 128 Cong.Rec. at H 9852 (section-by-section analysis) and H 9855 (notes of the Advisory Committee on the Federal Rules of Civil Procedure)).

### Conclusion

Under Rule 4(j) Coleman bears the burden of showing "good cause" for failure to serve Union within the Rule's ample 120-day time period. He has failed to meet that burden in this case. Both the legislative history's section-by-section analysis (128 Cong.Rec. at H 9852) and the Advisory Committee's notes (*id.* at H 9855) mandate dismissal. Accordingly this Court dismisses the Complaint against Union without prejudice.

---

**6.** This was not a missing defendant case, or one in which Union was involved in "evasion of service" (it was after all a stationary, not a moving, target). Coleman's own Complaint ¶ 6 alleged:

Defendant, Amalgamated Transit Union Local 1150 has its principal place of business at 503 Sixth Avenue North, Minneapolis, Minnesota, 55405.