**EXCALIBUR OIL, INC., Plaintiff,**

v.

**John GABLE and J. Alan Gable, individually and d/b/a Oil Development Company, et al., Defendants.**

**No. 84 C 8881.**

United States District Court,
N.D. Illinois, E.D.

April 4, 1985.

Howard Z. Gopman, Daniel R. Mintz, Howard Z. Gopman & Associates, Skokie, Ill., for plaintiff.

Dennis J. Horan, Thomas L. Browne, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Roger F. Redmond, Redmond & McFarland, Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Excalibur Oil, Inc. ("Excalibur") has moved for reconsideration of this Court's order denying an extension of time for service of process on certain defendants and dismissing this action without prejudice as to those defendants under Fed.R. Civ.P. ("Rule") 4(j). For the reasons stated in this memorandum opinion and order, Excalibur's motion is denied.

■ This Court's opinion in *Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. 476 (N.D.Ill.1984) rehearsed the reasons for and legislative history of Rule 4(j). That discussion, though it need not be repeated, should be kept in mind in dealing with Excalibur's actions (or inaction) here. For

current purposes the key issue is whether Excalibur has established its burden of showing "good cause" for its failure timely to have served all but two of the defendants. And on that score it must be realized, as Excalibur obviously does not, that a plaintiff's normal and expected course of conduct on filing suit is to place the summons for service immediately. Both in that light and by its very terms, Rule 4(j)'s 120-day watershed establishes not some kind of norm, but rather an *outside* not-to-be-exceeded date, akin to a statute of limitations.

This Court's earlier order viewed, and this opinion reviews, Excalibur's conduct in that setting. Only a brief recapitulation of the facts is needed to demonstrate the frailty of Excalibur's contentions.

Excalibur filed suit October 12, 1984. It says that after more than 25 days had elapsed (Motion ¶ 2):

> 2. On or about November 8, 1984, Plaintiff also learned that Alan Gable Oil Development Co. ["Gable Oil"] had filed a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of West Virginia.[1]

It then purports to assert strategic reasons for its nonservice on Gable Oil, assertedly tied to the pendency of the bankruptcy case. But those reasons are at best specious, and more likely spurious, in the present context:

1. As with much of Excalibur's presentation, it offers no hint as to why it did not act to obtain service on the defendants *other* than Gable Oil during that initial period (representing fully 20% of the outside limit of 120 days). Indeed Excalibur is silent throughout as to whether or how it exercised diligence as to those defendants, who are after all the only ones really at issue here (Gable Oil is no longer a defendant, having been dropped by the Amended Complaint).

2. As n. 1 states, one of the things Excalibur did in its Amended Complaint was to eliminate Gable Oil from its list of defendants.

3. No defendants were *added* by the Amended Complaint. Had that been the case, of course, a

1. No explanation at all is made as to the claimed purpose to be served by such nonservice. After all, the automatic bankruptcy stay operated to prevent *proceeding* against Gable Oil, but not necessarily to bar the mere *service of process* on it. Indeed Excalibur has not sought to explain just how it could determine the Bankruptcy Court's position on lifting the automatic stay (Motion ¶ 3) until Excalibur had Gable Oil at least potentially in court by serving it with process, at which point Excalibur would clearly have standing to move in the bankruptcy court to lift the stay. However, for the fully dispositive reason discussed in the next paragraph, this Court need not decide what is really a moot issue as to Excalibur's failure to serve *Gable Oil*.[2]

2. More significantly, nothing in Gable Oil's bankruptcy situation even begins to explain or justify Excalibur's nonservice on all the *individual defendants*. As to them the 120-day period clearly continued to run unabated.

Finally Excalibur asserts it filed its Amended Complaint[3] January 8, 1985 (Motion ¶ 6), 88 days after suit was originally filed, and only then did it "attempt[ ] to effectuate service by mail on all defendants pursuant to Rule 4 of the FRCP" (Motion ¶ 7). Again no good cause is shown for its inaction (really sleeping on its rights) as to the individual defendants until so much of the 120-day limit had expired.[4] Moreover

new 120-day timetable would have begun to run as to the added defendants.

4. It will not do for Excalibur to rely on the fact of filing an Amended Complaint to justify its lack of prior service of process on the individual defendants. Once again the normal and expected procedure would have been to have served defendants first, *then* to amend the Complaint. Had that sensible course of action been followed, the already-served defendants would simply have been required to file a motion for a revised timetable to respond to the Amended Complaint. Thus Excalibur's stated "desire to comply with Rule 11 of the FRCP and investigate the facts of its case" (Motion ¶ 12), though an independently commendable goal, is not even a makeweight in terms of Rule 4(j).

Excalibur necessarily knew Rule 12(a) gives a defendant 20 days after service to file its responsive pleading. Once Excalibur opted to attempt *mail* service at that late date, it put itself in the position where a defendant's nonresponse (assuming it had taken two days for delivery of the mailed summons to that defendant) would give Excalibur at most *10* days thereafter to accomplish personal service on that defendant.[5]

Essentially Excalibur is seeking to bootstrap itself from its own inaction by urging defendants took evasive tactics at that extremely late stage. But this is not a case in which a party has exercised diligence in attempting service, only to be frustrated by evasion on defendants' part. Excalibur did not discharge its own responsibilities in the first instance, and the later nonappearance by defendants who have been served by mail (something those defendants are entitled to do, subject only to paying the price of later personal service under Rule 4) does not excuse that extended inaction.

Excalibur's motion for reconsideration is therefore denied. This action remains dismissed without prejudice as to the defendants dealt with by this Court's February 12 order.

---

**5.** Among the other things on which Excalibur is eloquently silent is why, with nearly three-fourths of the 120 days having elapsed, it did not pursue *personal* service rather than the mail service that could thus shrink the remaining time to the near-vanishing point. After all, service by mail, though a convenient measure to try when a case is first filed, gives no assurance at all of obtaining effective jurisdiction over the defendant. Excalibur glosses over the fact, obvious from Rule 4(c)(2)(D), that the only consequence of a defendant's ignoring mail service is to impose on that defendant the cost of subsequent personal service—not, as with ignoring original personal service, the risk of a default judgment.