**Lois M. BADEN, Plaintiff,**

v.

**CRAIG–HALLUM, INC. and DeWayne Derksen, Defendants.**

Civ. No. 4–86–565.

United States District Court,
D. Minnesota,
Fourth Division.

May 11, 1987.

Jack D. Elmquist, Elmquist & Sarff, Minneapolis, Minn., for plaintiff.

Terrence J. Fleming, Lindquist & Vennum, Minneapolis, Minn., for defendant Craig-Hallum, Inc.

David G. Moeller, Graham, Erickson, Hartman & Johnson, Minneapolis, Minn., for defendant DeWayne Derksen.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant DeWayne Derksen's motion to dismiss and for Rule 11 sanctions. Defendant's motion will be denied.

## FACTS

Plaintiff Lois M. Baden is a resident of Minnetonka, Minnesota. Defendant Craig-Hallum, Inc. (Craig-Hallum) is a Minne-apolis-based broker-dealer engaged in the sale of securities. Defendant DeWayne Derksen was at all times relevant to this litigation an employee, agent, and sales representative of Craig-Hallum operating out of Craig-Hallum's Edina, Minnesota office. This action arises under the Federal Securities Act of 1933 and the Securities Exchange Act of 1934. Plaintiff also brings various state law claims pursuant to the Court's pendent jurisdiction.

In 1982[1] Derksen solicited plaintiff to open a Craig-Hallum account. Derksen allegedly represented to plaintiff that funds which she placed with Craig-Hallum would not be used for speculative investments, and that there would be no unnecessary trading. In reliance upon Derksen's representations plaintiff opened a Craig-Hallum account in the amount of $35,000. Plaintiff alleges that from the outset Derksen traded securities on plaintiff's account negligently and with careless and reckless disregard for plaintiff's financial objectives, and that Craig-Hallum authorized, ratified, and approved Derksen's acts, and was negligent in employing Derksen. Plaintiff alleges that as a consequence of Derksen's wrongful conduct she lost virtually all of her original $35,000 investment. Plaintiff seeks to recover the value of her original investment, as well as punitive damages against each defendant in an amount exceeding $50,000.

Plaintiff filed this action July 16, 1986. The summons and complaint was served on defendant Craig-Hallum July 17, 1986. On that date plaintiff engaged a legal process server to serve defendant Derksen at Derksen's last known address. The process server was unable to effect personal service on Derksen and notified plaintiff's counsel of that fact November 5, 1986. Plaintiff's counsel attempted to effect mail service on Derksen November 25, 1986; however, no acknowledgement was ever received. On January 26, 1987, in connection with his inspection of Craig-Hallum documents,

---

1. The facts of the case are set forth in *Baden v. Craig-Hallum, Inc.*, 646 F.Supp. 483 (D.Minn. 1986) and will not be extensively repeated here.

plaintiff's counsel learned that Derksen was employed by Summit Investment Co. in Minneapolis. Derksen was served at Summit offices on February 2, 1987. Service was effected 201 days following plaintiff's filing of the summons and complaint.

Defendant Derksen now moves for dismissal of plaintiff's action against him, on the ground he was not timely served.

## DISCUSSION

Defendant Derksen moves for dismissal on the ground the summons and complaint was not served on him within 120 days of its filing, as required by rule 4(j) of the Federal Rules of Civil Procedure. Rule 4(j) provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

Fed.R.Civ.P. 4(j). Prior to 1983, rule 4 did not make any specific provision for a time period within which service was to be accomplished. 2 J. Moore, *Moore's Federal Practice* ¶ 4.46 at 4–432. Under the old rule, service was performed by United States Marshals and plaintiffs were held to a flexible "due diligence" standard. *Shuster v. Conley*, 107 F.R.D. 755, 756 (W.D.Pa. 1985), *citing Blaha v. A.H. Robins and Co.*, 536 F.Supp. 344, 349 (W.D.Mich.1982), *aff'd*, 708 F.2d 238 (6th Cir.1983). Effective February 26, 1983, rule 4(j) imposes a 120–day time limit in which service must be made, and service may be made by any nonparty adult. As explained in the *Wright & Miller* treatise:

> The addition of this new timing provision is best understood in the context of the other amendments that were made to Rule 4 in 1982. Prior to 1982, service was performed by marshals and a timing restriction was not thought to be necessary. However, Rule 4 now authorizes service of process by any nonparty adult and service by mail and these changes might produce problems of timeliness. Subdivision (j) answers that need.

4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1138 (Supp.) at 261 (footnotes omitted). According to the legislative history of the 1983 amendment, the purpose of rule 4(j) is to force parties and their attorneys to be diligent in prosecuting their causes of action. 128 Cong.Rec. H9851 (daily ed. Dec. 15, 1982) (section-by-section analysis of the 1982 amendments to the Rules, submitted by Rep. Edwards); *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476, 477 (N.D.Ill.1984). Upon plaintiff's failure to comply with rule 4(j), the action may be dismissed as to the unserved defendant, without prejudice. *Moore* § 4.46 at 4–31. Dismissal may be on the motion of the unserved defendant, or on the Court's own initiative, with notice. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir.1985). However, a diligent plaintiff who has made "reasonable efforts" but is unable to effect service may avoid such a harsh result by showing that good cause exists for the failure to timely serve or by moving for an enlargement of time in which to serve pursuant to Fed.R.Civ.P. 6(b). H.R. 7154, 97th Cong., 2d Sess., *reprinted in* 1982 U.S. Code Cong. & Admin. News 4434, 4437; *Boykin v. Commerce Union Bank of Union City, Tenn.*, 109 F.R.D. 344, 345 (W.D. Tenn.1986). Rule 6(b) provides:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the

result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b) (59(b), (d) and (e), 60(b), and 74(a), except to the extent and under the conditions stated in them.

Fed.R.Civ.P. 6(b).

▆ In general, plaintiff may move for an extension of time pursuant to rule 6(b) either before the expiration of the 120–day period for service or after the 120–day period has expired. *United States For Use and Benefit of DeLoss v. Kenner General Contractors, Inc.*, 764 F.2d 707, 711 (9th Cir.1985). In the former case, motions to extend are to be liberally permitted, consistent with the admonition of rule 1 that the rules are to "be construed to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Boykin*, 109 F.R.D. at 349, *citing* 2 *Moore*, ¶ 6.08. Where a party delays until after the 120–day period has expired to move for an extension, or raises a 6(b) motion as a defense to a motion to dismiss, however, the rule 4(j) time limits are to be strictly construed, although the rule's harshness is mitigated by the "good cause" time allowances permitted under rule 6(b).[2] *Norlock v. City of Garland*, 768 F.2d 654, 658 (5th Cir.1985); *Burks v. Griffith*, 100 F.R.D. 491, 492 (N.D.N.Y.1984); *Boykin*, 109 F.R.D. at 349. In either event, the burden is on the party on whose behalf service is required to show "good cause" why service was not effected within the prescribed 120–day period. *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir.1985); *Coleman*, 100 F.R.D. at 478; *Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 507 (E.D.La. 1985); *Ruley v. Nelson*, 106 F.R.D. 514, 517 (D.Nev.1985). 106 F.R.D. at 517.

▆ In this case, plaintiff acknowledges service was not made on Derksen within 120 days, as required by rule 4(j). Plaintiff's complaint was filed July 16, 1986. Service was made on defendant Derksen February 2, 1987—a delay of 201 days. Plaintiff's counsel also acknowledges he did not move for an extension of the service period prior to the expiration of 120 days. However, plaintiff's counsel now argues that he had good cause for delay, based on the following factors:

(1) Plaintiff's counsel was misled into believing that counsel for Craig-Hallum also served as counsel for defendant Derksen. Plaintiff made service as to both defendants on Craig-Hallum counsel, both as to the original complaint and the two amended complaints. At the September 17, 1986 motion hearing counsel for Craig-Hallum erroneously stated that his firm represented both defendants. Counsel for Craig-Hallum corrected this misstatement by letter to plaintiff's counsel dated September 22, 1986. However, plaintiff's counsel states that the misstatement occasioned confusion and delay, to his client's detriment.

(2) Plaintiff did make diligent efforts to serve Derksen. Plaintiff hired a process server who attempted to serve Derksen at his last known address. That address was occupied by a lessee of Derksen. The server left the summons and complaint with Derksen's tenant, with a request that the summons and complaint be given to Derksen. The legal services firm engaged by plaintiff's counsel made attempts to serve Derksen through early November 1986 at which time it filed a "not found" notice as to Derksen with plaintiff's counsel. Plaintiff's counsel then attempted service by mail; however, no acknowledgement was

---

**2.** Rule 6(b)(2) states an "excusable neglect" standard for an enlargement of time after the expiration of the specified time period, while rule 4(j) enunciates a "good cause" standard. In *Kenner*, the Ninth Circuit explored the interplay between these two provisions, concluding that because rule 6(b) is a general provision authorizing extensions of time limits in a variety of situations, while rule 4(j), in contrast, is a specific provision imposing a time limit on service of the summons and complaint, the "good cause" standard of rule 4(j) applies regardless of whether the service issue is raised by a defendant on a motion to dismiss under rule 4(j), is raised by the judge on his own initiative, or is raised by the plaintiff on a motion under rule 6(b)(2). *Kenner*, 764 F.2d at 711, *citing*, 128 Cong.Rec. H 9849, H 9850 (daily ed. Dec. 15, 1982), *reprinted in* 1982 U.S. Code Cong. & Admin. News 4437, 4441.

received. Once plaintiff's counsel learned the identity of Derksen's employer in January 1987 he arranged for the summons and complaint to be served upon Derksen at his office.

(3) Plaintiff filed a third amended complaint November 5, 1987. Service of the third amended complaint was made on Derksen well within the 120–day limits of rule 4(j).[3]

(4) Derksen had actual knowledge of the lawsuit against him well within the 120–day period, since it is logical to assume he was contacted by counsel for Craig-Hallum during that period with requests for documents and information.[4]

"Good cause" is not defined by rule 4(j), and the only example of good cause provided by the legislative history is the obvious one of defendant's affirmative evasion of service. 128 Cong.Rec. H 9849, H 9852 n. 25, *cited in Kenner,* 764 F.2d at 710. It has been stated that the good cause standard is a "stringent standard" requiring diligence. *Davis-Wilson,* 106 F.R.D. at 509. The courts have repeatedly held that inadvertence of counsel does not qualify as

good cause, *Ruley,* 106 F.R.D. at 518, *citing Wei,* 763 F.2d at 372; *Coleman,* 100 F.R.D. at 477, and courts interpreting the rule have found "good cause" to encompass more than a single unsuccessful attempt at service. *Boykin,* 109 F.R.D. at 348. As stated by the United States Court of Appeals for the Fifth Circuit in *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304, 1306 (5th Cir.1985):

> Without attempting a rigid or all-encompassing definition of "good cause," it would appear to require *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified" is normally required.

*Winter,* 776 F.2d at 1306, *quoting* 10 *Wright, Miller & Kane,* § 1165 at 622. An unsuccessful attempt to serve defendant by mail during the 120–day period does not, without more, constitute the degree of dil-

---

**3.** This argument is without merit. The courts have made clear that plaintiff's amendment of the complaint does not justify delay in service of the original complaint unless the amended complaint names a new party defendant. *Wei,* 763 F.2d at 372; *Excalibur Oil, Inc. v. Gable,* 105 F.R.D. 543, 544 (N.D.Ill.1985). If the amended complaint adds a defendant, then a new 120–day timetable begins to run as to the added defendant. However, the amendment does not toll the 120–day period as to defendants already named. The appropriate course is for plaintiff to amend the original complaint after serving it upon the original defendants. Fed.R.Civ.P. 15(a); *Wei,* 763 F.2d at 372. As stated in *Excalibur:*

> It will not do for Excalibur to rely on the fact of filing an Amended Complaint to justify its lack of prior service of process on the individual defendants. Once again the normal and expected procedure would have been to have served defendants first, *then* to amend the Complaint. Had that sensible course of action been followed, the already-served defendants would simply have been required to file a motion for a revised timetable to respond to the Amended Complaint. Thus Excalibur's stated "desire to comply with Rule 11 of the FRCP and investigate the facts of its case" (Motion ¶ 12), though an independently com-

mendable goal, is not even a makeweight in terms of Rule 4(j).

*Excalibur,* 105 F.R.D. at 544 n. 4.

**4.** This argument also is without merit. The mere fact that a defendant has received actual notice of the pending action is not sufficient if there has not been compliance with the plain requirements of rule 4. *Davis-Wilson,* 106 F.R.D. at 508, *citing Tart v. Hudgins,* 58 F.R.D. 116 (M.D.N.C.1972); *Rixner v. White,* 417 F.Supp. 995 (D.N.D.1976).

Plaintiff also argues that Derksen has not been prejudiced by the delay. Prior to the 1983 amendments, courts generally required a showing of prejudice to the party who was not timely served before dismissing an action. *Boykin,* 109 F.R.D. at 347. Subsequent to that amendment, the courts have held that no prejudice to the defendant need be shown. Neither the amended version of rule 4(j) nor its legislative history make any mention of prejudice, and given the legislature's stated policy of " 'encourag[ing] prompt movement of civil actions in federal courts,' the absence of prejudice to the defendant would not appear to be a relevant consideration." 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.46, at n. 4 (2d ed. 1985) (citation omitted.) *See Boykin,* 109 F.R.D. at 348.

igence necessary to surmount the good cause barrier, *Excalibur Oil*, 105 F.R.D. at 545; *Prather v. Raymond Construction Co.*, 570 F.Supp. 278, 279 (N.D.Ga.1983); *Boykin*, 109 F.R.D. at 349; nor does the act of placing a single fruitless telephone call, *Kenner*, 764 F.2d at 710. The rule's legislative history makes reference to plaintiff's "diligence" and "reasonable efforts to effect service," House Report at 4442, and it is these concepts on which the courts have focussed. *Boykin*, 109 F.R.D. at 348.

■ With plaintiff's attempts to serve Derksen in view, the Court finds that plaintiff has demonstrated the requisite "good cause" for failure to effect service within the rule 4(j) 120–day period. Plaintiff may well have been misled by representations of Craig-Hallum counsel on September 17, 1986 that his firm represented both defendants, and may have believed that by appearing at the motion hearing counsel was acknowledging that both defendants had been properly served. Of course, Craig-Hallum's counsel moved quickly to correct this misinformation, but nevertheless, plaintiff may have been justifiably confused and lost valuable time. Plaintiff's confusion as to whether particular counsel does or does not represent a defendant has been relied upon by the courts as a "good cause" factor for delay. *See Moorehead v. Miller*, 102 F.R.D. 834, 836 (D.V.I.1984); *Geller v. Newell*, 602 F.Supp. 501 (S.D.N.Y. 1984) (process was timely served upon defendant's former attorney, and when plaintiff was informed that the attorney was no longer authorized to accept process, plaintiff made a diligent effort to locate and serve defendant).

In addition, the record reflects that plaintiff did exercise a certain degree of diligence in attempting personal service of Derksen. Private legal process firms were employed through early November 1986, and upon receipt of a "not found" notice, plaintiff attempted service by mail. Once having learned the identity of Derksen's employer, plaintiff completed service in an expeditious manner. This is not a case where plaintiff made no attempts whatsoever at service, *see, e.g., Kenner*, 764 F.2d at 710 (half-hearted efforts); *Salow v. Circus-Circus Hotels, Inc.*, 108 F.R.D. 394, 395 (D.Nev.1985) (no attempt). Rather, it is a case where plaintiff has demonstrated some diligence and a reasonable effort to effect service.[5]

For these reasons, the Court finds that plaintiff has shown good cause for delay. The case law supports such a finding. In *Moorehead* plaintiff was unable to effect service within the 120–day time period prescribed by rule 4(j) due to his own hospitalization and also due to confusion in the district court clerk's office resulting from the change over from service by the United States Marshal's office to service by plaintiff. The clerk's office erroneously informed plaintiff that service had already been made. Once plaintiff learned of the error, he completed service in an expeditious manner. Under the circumstances, the court found that plaintiff had demonstrated good cause for delay. *Moorehead*, 102 F.R.D. at 834. In *Prather* the plaintiff attempted service by mail when his attempts at personal service proved fruitless. Defendant admitted receiving the mailed summons and complaint but in effect evaded service by failing to return the acknowledgement. Under the circumstances, the court found that plaintiff had demonstrated good cause for delay. In *Arroyo v. Wheat*, 102 F.R.D. 516 (D.Nev.1984), plaintiffs attempted service by mail, and upon learning of the insufficiency of service through defendant's motion to quash, immediately moved for an extension of time under rule 6(b) and promptly effected personal service upon the defendant. Under the circumstances, the court found that plaintiff had demonstrated good cause for delay, stating that rule 4(j) is intended as a sanction for inadvertent or heedless nonservice, and is

---

5. Nor can the Court ignore the fact that the summons and complaint was left with Derksen's lessee, and a second summons and complaint mailed to the address which Derksen now acknowledges he occupies. Although Derksen denies ever having received either complaint, it seems at least as likely as not that Derksen's first acquaintance with the complaint did not take place on February 2, 1987.

not intended to penalize plaintiffs who demonstrate reasonable diligence. *Arroyo*, 102 F.R.D. at 519. *See also Federal Deposit Insurance Corp. v. Sims*, 100 F.R.D. 792 (N.D.Ala.1984) (court liberally construed plaintiff's abortive attempts at effecting service as bona fide).

Accordingly, based on the foregoing, Derksen's motion to dismiss will be denied.

**Rule 11**

█ Derksen also moves for rule 11 sanctions. Derksen argues that sanctions are justified because plaintiff failed to personally serve him or to move for a rule 6(b) extension of time despite "repeated warnings" that Derksen had not been personally served.

The courts have long had the inherent equitable power to award costs including attorneys' fees to a prevailing party where the unsuccessful litigant has been found to have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (American rule). A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure, Rule 11, which provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Rule 11 departs from prior law in imposing on the signatory the affirmative burden of ascertaining that the matters averred to are grounded in law or fact. The rule requires that the signatory certify "to the best of his knowledge, information, and belief *formed after reasonable inquiry*" that the document is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11 (emphasis added); *see Young v. Internal Revenue Service*, 596 F.Supp. 141, 151 (N.D.Ind. 1984). Thus, Rule 11 states a more stringent standard than the good faith standard of *Alyeska Pipeline*. As stated by the United States Court of Appeals for the Second Circuit in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985):

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. For the language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.

The Court finds that rule 11 sanctions are not warranted in the case at bar. Plaintiff did exercise reasonable diligence in her attempts to personally serve defendant Derksen.

Based on the foregoing, and upon review of all files, records and proceedings herein,

IT IS ORDERED that defendant Derksen's motion to dismiss and for rule 11 sanctions is denied.