Mylan Technologies, Inc. v. Zydus Noveltech, Inc., No. S0041-09 CnC (Crawford, J., Aug. 9, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]
STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Chittenden Unit                                   Docket No.: S0041-09 CnC

MYLAN TECHNOLOGIES, INC.
and MYLAN INC.

v.

ZYDUS NOVELTECH, INC., SHARAD K. GOVIL,
CADILA HEALTHCARE, LTD., PANKAJ PATEL and
SUNIL ROY

DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS
(STATUTE OF LIMITATIONS AND 9 V.S.A. § 4607(a))

This case concerns claims by Mylan Technologies, Inc. and Mylan, Inc. ("Mylan") that its former president Sharad K. Govil violated the Vermont Trade Secrets Act, 9 V.S.A. §§ 4601–4609, when he left Mylan to go to work for Zydus Noveltech, Inc. In addition to the trade secrets claim, Mylan made similar claims of breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, breach of fiduciary duty, and unfair competition.

Mylan originally sued Zydus and Dr. Govil in January 2009. In November 2009, Mylan moved to amend the complaint to name Cadila Healthcare, Ltd. and two of its officers. The court granted the motion on June 16, 2010. The claims against Cadila, Mr. Patel, and Mr. Roy are for misappropriation of trade secrets, tortious interference with contract, and unfair competition.

Cadila is an Indian corporation. Mr. Patel and Mr. Roy are both Indian nationals who live in that country. Mylan initially sought to persuade the three Indian defendants to accept service of process through their American attorney. The Indian defendants rejected this request. In September 2010, Mylan retained Indian counsel and started the process of effecting service through the Hague Convention.

In May 2011, the Indian defendants filed a motion to dismiss the amended complaint on grounds of lack of personal jurisdiction and failure to make service of process within 60 days of filing as required by V.R.C.P. 6. The court denied the personal jurisdiction motion and that ruling is not relevant here. With respect to the time for service, the court ruled:

Given that (1) plaintiffs commenced some form of service within the 60 day window provided by V.R.C.P. 3; (2) plaintiffs have attempted service pursuant to the Hague Convention several times; and (3) a request for service pursuant to the Hague is currently pending with India's Ministry of Law and Justice, the court will exercise its discretion and extend the time for service on the Indian defendants. Service pursuant to the Hague Convention must be completed by May 15, 2012 or the Indian defendants will be dismissed from the case without prejudice.

Decision on Pending Motions at 2 (filed Oct. 26, 2011). Mylan completed service pursuant to the Hague Convention in November 2011.

ANALYSIS

The Indian defendants move for judgment on the pleadings on two grounds. First, they argue that all of the counts against them are time-barred pursuant to 12 V.S.A. § 523. Second, they argue that the tortious-interference and unfair competition claims against them are predicated on the alleged misappropriation of trade secrets, and are thus displaced by 9 V.S.A. § 4607(a). The court has considered the parties' filings on these issues, as well as their argument at a hearing held on August 8, 2012.

I. Statute of Limitations

A motion to dismiss on statute of limitations grounds raises four questions: (1) when did the claim accrue; (2) what is the governing limitations period; (3) when was the complaint filed; and (4) was service complete within the time allowed by law.

1. Accrual of the cause of action

"Accrual" for purposes of this case means the date by which the plaintiffs knew or reasonably should have known about their claim. The parties disagree over the date. The Indian defendants assert that the correct date is September 8, 2008, which is the date of a demand letter sent by Mylan to Zydus, Dr. Govil, and Cadila threatening to sue if Dr. Govil revealed trade secrets. Plaintiffs describe this letter as a routine measure issued whenever an employee goes to work for a competitor. Plaintiffs argue that they had no reason to know of the claim until January 2009 when they learned that Cadila was purchasing special equipment used in the same business (transdermal administration of medication) as Mylan.

For purposes of the motion for judgment on the pleadings, the court will use the earlier date put forward by the Indian defendants.

2

## 2. Governing period

The Indian defendants contend that all claims are governed by 12 V.S.A. § 523 which establishes a three-year limitations period after the date "the misappropriation [of trade secrets] was discovered or reasonably should have been discovered." In other words, the Indian defendants contend that the three year period began to run on September 8, 2008, and expired three years later. The plaintiffs argue that certain of their claims are contractual and are entitled to the general six-year period. See 12 V.S.A. § 511.

For purposes of the motion, the court will use the three-year period. This is the shortest possible period proposed by either side. If it is satisfied, then all claims are timely.

## 3. Filing

There is no dispute that the amended complaint was filed with the court in November 2009 and that the filing date is within three years of accrual of the cause of action. Under the so-called *Wesiburgh* rule, the timely filing tolls the statue of limitations, but only if timely service under the Rules of Civil Procedure was accomplished. *Bessette v. Dep't of Corr.*, 2007 VT 42, ¶ 5, 182 Vt. 1 (quoting *Weisburgh v. McClure Newspapers, Inc.*, 136 Vt. 594, 595 (1979))).

## 4. Service of process

The remaining question—and the one on which the court's ruling principally depends—is whether plaintiffs effected service within the time permitted by law.

The time for completion of service is set by V.R.C.P. 3 which requires "[w]hen an action is commenced by filing, summons and complaint must be served upon the defendant within 60 days after the filing of the complaint." The 60-day clock for service started running on June 16, 2010. See *The Children's Store v. Cody Enters. Inc.*, 154 Vt. 634, 642 (1990) (the date of "filing" of the complaint for purposes of Rule 3 is the date the court grants the motion allowing plaintiff to amend its complaint and add a party defendant).

The 60-day period is subject to enlargement under Rule 6(b), which provides:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made

3

after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . .

Motions to enlarge the time for service are very common, even in cases which do not involve defendants located outside of the United States. They are routinely granted. Plaintiffs did not seek additional time to make service within the 60 days. The court, however, granted them additional time after considering the difficulties they experienced in completing service abroad.

This is not the first time a statute of limitations issue has turned upon the timing of service. In *Bessette*, the plaintiff filed suit within the limitations period, but did not receive a waiver from one of the named defendants and, just before the limitations period expired, moved for a Rule 6(b)(1) enlargement to complete service. 2007 VT 42, ¶ 3. The trial court granted the enlargement, and the defendant was served within the enlarged time, but filed a motion to dismiss on the grounds that the limitations period had run and that Rule 3's 60-day period for service is absolute. *Id*. ¶¶ 3–5. The trial court disagreed and kept the defendant in the case, and the defendant took an interlocutory appeal. *Id*. ¶ 4. The Supreme Court affirmed, holding that "service is still timely if completed within a properly awarded Rule 6 extension." *Id*. ¶ 1.

The facts in this case are different than those in *Bessette*. Here, it is undisputed that Mylan did not seek a Rule 6(b)(1) enlargement within 60 days of the court's June 16, 2010 ruling granting Mylan's motion to amend. However, as noted above, on October 26, 2011 the court denied the Indian defendants' motion to dismiss, and gave Mylan until May 15, 2012 to complete service. Mylan completed service before the court's May 15, 2012 deadline.

The parties' arguments boil down to a dispute over whether the court's October 26, 2011 ruling was a "properly granted Rule 6 extension," *Bessette*, 2007 VT 43, ¶ 10, that has the effect of making service "timely" for the purposes of the *Weisburgh* rule. The Indian defendants argue, and the court agrees, that the court's ruling could not have been made pursuant to V.R.C.P. 6(b)(1), since Mylan did not request an enlargement within Rule 3's 60-day period. The questions thus become (1) whether the court's ruling was appropriate under V.R.C.P. 6(b)(2), and (2) whether the extension under Rule 6(b)(2) effectively made the service "timely" for the purposes of the *Weisburgh* rule.

**Whether the Court's October 26, 2011 Ruling was Appropriate Under V.R.C.P. 6(b)(2)**

The court now makes explicit what was implicit in its October 26, 2011 ruling: the circumstances in this case justified an extension pursuant to Rule 6(b)(2). Initially, since Rule 6(b)(2) states that the court may grant an extension "upon motion," a request for such an extension should be made upon a formal application for an order. See 4B Wright, Miller, Kane & Marcus, Federal Practice and Procedure: Civil 3d § 1165 (WL updated Apr. 2012). However,

Mylan's opposition to the Indian defendants' motion to dismiss effectively asserted an excusable-neglect type argument. Pls.' Opp'n to Cadila's Mot. to Dismiss at 13 (arguing that the delay in effecting service could not be attributed to a lack of diligence on Mylan's part). In light of that, and the procedural posture in which the service issue was raised, it makes sense to treat Mylan's opposition as a Rule 6(b)(2) motion.[1] In any case, no purpose would be served by requiring Mylan to submit a motion now, since the Indian defendants have (twice) raised and been heard on the service-of-process/timing issue. See *Carter v. U.S. Dep't of Justice*, No. 5:04cv306-RH, 2010 WL 1645048, at *2 (M.D. Fla. Apr. 20, 2010) (no purpose would be served by requiring plaintiff to submit a Rule 6(b) motion where the defendant had already raised and been heard on the timeliness issue).

Turning to the basis for a Rule 6(b)(2) extension, the court finds no reason to depart from its October 26, 2011 ruling. Rule 6(b)(2) permits an extension where the failure to act was the result of "excusable neglect." Excusable neglect "is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time." 4B Federal Practice & Procedure: Civil 3d § 1165.

> Common sense indicates that among the most important factors are: the possibility of prejudice to the other parties, the length of the applicant's delay and its impact on the proceeding, the reason for the delay and whether it was within the control of the movant, and whether the movant has acted in good faith.

*Id*.; see also *In re Town of Killington*, 2003 VT 87A, ¶ 16, 176 Vt. 60 (reciting the same four factors for evaluating excusable neglect under V.R.A.P. 4(d)). The most important factor is the reason for the delay, including whether it was within the reasonable control of the movant. *Town of Killington*, 2003 VT 87A, ¶ 16. As the court's October 26, 2011 suggested, the reason for the delay in completing service was due to circumstances largely outside of Mylan's control, including difficulties determining who might be representing the Indian defendants and then the need to go through the lengthy process of service under the Hague Convention.[2] Moreover, there is no indication of any lack of good faith on Mylan's part—indeed, Mylan was diligent in attempting to effectuate service after June 16, 2010. Furthermore, although it took a long time to complete service, the court can discern little prejudice to the other parties to the case, and the

---

[1] Other courts have done the same under similar circumstances. E.g., *Potter v. Health Care Auth.*, No. 03-1326-WEB, 2006 WL 580986, at *4 n.4 (D. Kan. Mar. 8, 2006) (treating plaintiff's response to a motion as the "functional equivalent" of Rule 6(b) motion for extension on "excusable neglect" grounds); *Card v. Estate of Casto*, No. CA-8157, 1990 WL 173365, at *2 (Ohio Ct. App. Nov. 5, 1990) (treating memorandum in opposition to motion to dismiss as a Rule 6(b) motion to extend time). Of course, the better practice would be to file a formal motion pursuant to V.R.C.P. 7.

[2] The Indian defendants assert that Mylan did not even start the process of attempting service under the Hague Convention until after the 60-day window had closed. The court does not see that as determinative in light of the fact that Mylan was diligent in attempting to procure a waiver of service and, when that failed, in attempting service under the Hague Convention.

5

impact on the proceedings has not been excessive, especially since the Indian defendants were participating in the case (without waiving their objections, of course) anyway.[3]

The issues raised by the delay in obtaining service would be simpler if plaintiffs had filed a motion under Rule 6(b)(1) within the 60 day period. Absent some unusual circumstances, the extension of time to serve would have been automatic. Relief under rule 6(b)(2) subjects the plaintiffs' conduct to more scrutiny, but it does not bar relief entirely. If it did, there would be no need to read past Rule 6(b)(1).

The circumstances which amount to excusable neglect include the difficulty of serving process in a foreign country. India is no exception. As the record in this case indicates, service abroad requires an attorney to operate in an unfamiliar legal environment. In this case, the plaintiffs took reasonable measures to move the process along, including hiring an Indian law firm. The court reviewed these measures and decided that they were reasonable and sincerely intended to effect service. For this reason, the court allowed additional time to serve – many more months as it happened than were actually needed. For these reasons, the court remains convinced that extending the time to effect service under Rule 6(b)(2) remains the right thing to do.

**Whether the Extension under Rule 6(b)(2) Made the Service "Timely"**

The Indian defendants maintain that, unlike Rule 6(b)(1), Rule 6(b)(2) cannot be used to toll the statute of limitations. They maintain that any extension of time for service under Rule 6(b) must be obtained before the expiry of both the statute of limitations and the time for service allowed by Rule 3. Defendants argue that the court has no authority to revive an action retroactively after it has become time-barred. The court disagrees, and concludes that a properly-granted extension under either Rule 6(b)(1) or Rule 6(b)(2) makes service "timely" for the purposes of the *Weisburgh* rule.

Although it deals with a Rule 6(b)(1) extension, the reasoning in *Bessette* applies with equal force to Rule 6(b)(2) extensions. The Court in *Bessette* explicitly held that "service is still timely if completed within a properly awarded *Rule 6* extension." 2007 VT 42, ¶ 1 (emphasis added). The Court did not suggest that its holding might be limited to Rule 6(b)(1) extensions. Indeed, the Court cited *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998), which held that the statute of limitations was tolled because the plaintiff filed suit within the limitations period, and completed service within an extension granted pursuant to F.R.C.P. 6(b)(2) on the basis of excusable neglect. Moreover, the Court recognized that "[t]he time permitted for service once a

---

[3] The Indian defendants pointed out at oral argument that in its October 26, 2011 ruling, the court remarked that the evidence suggested that "the service failures stem from plaintiffs' own oversight." Decision on Pending Mots. at 2 (filed Oct. 26, 2011). The point of that comment was not that Mylan was not diligent in *attempting* service, but instead that for various reasons—such as unpaid filing fees or incorrectly attested documents—many of the attempts failed.

6

complaint has been filed . . . is a procedural matter controlled by the rules." 2007 VT 42, ¶ 13. This court can discern no basis for concluding that the time permitted for service is controlled by only *some* of the rules. Authority from Vermont is in accord. See *Zhang v. Smugglers' Notch Mgmt. Co.*, No. 2:11-cv-302, 2012 WL 2872841, at *3–*4 (D. Vt. July 12, 2012) (concluding that the plaintiff had demonstrated excusable neglect and was entitled to enlargement under Rule 6(b)(2), thereby rendering moot the defendant's motion to dismiss on statute-of-limitations grounds); *Lucus v. Wengert*, No. 2:06-CV-169, 2007 WL 2792496, at *4 (D. Vt. Sept. 25, 2007) (granting an extension pursuant to V.R.C.P. 6(b)(2), thereby making service timely and tolling the statute of limitations).[4]

These rulings demonstrate the fundamental difference between the statutory limitations date and the Rule 3 and Rule 6 time requirements. The statutory limitations period cannot be "fixed" by the court. Despite the inroads made by subjective discovery and accrual rules, people and organizations continue to rely upon the fixed periods of time in making decisions about keeping records, maintaining insurance, and other measures related to potential liability. Few people would rely upon the possibility that a delay in service will relieve them of liability. Instead, Rule 3 and Rule 6 are court-oriented "housekeeping" rules which relate to the management of lawsuits within the legal system. They are subject to extension by the court precisely because they do not confer substantive rights and expectations upon the parties. As long as the extension results from a reasonable exercise of discretionary decision-making by the judge, it should have the same effect upon the parties whether it issues under Rule 6(b)(1) or Rule 6(b)(2).

None of the cases the Indian defendants cite convince the court that it should reach a contrary conclusion. In *Fercenia v. Guiduli*, the plaintiff filed her complaint within the limitations period but only filed proof of Rule 4(l) service by waiver after the 60-day window had closed. 2003 VT 50, ¶¶ 3–4, 175 Vt. 541 (mem.). Ruling on an interlocutory appeal, the Supreme Court noted that Rule 4(l) makes service complete on the date the waiver is filed, and concluded that timely service under Rule 3 was not completed. *Id*. ¶ 9. The plaintiff did not, however, move for an extension of the filing deadline, and the trial court did not determine whether the failure to file on time was the result of excusable neglect. The only rule considered on appeal was Rule 3.

---

[4] Authorities from other jurisdictions are also in accord. See *Protective Life Ins. Co. v. Zaliagiris*, No. 5:07 cv 112, 2008 WL 2180187, at *2 (W.D.N.C. May 22, 2008) (even though the time for service had expired, court found excusable neglect and ordered, *nunc pro tunc*, that plaintiff be allowed additional time to serve defendants); *Nelle v. Ciotti*, 151 F.R.D. 568, 569 (E.D. Pa. 1993) ("A party has the opportunity to show good cause after the 120 day period has expired pursuant to filing a motion for enlargement of time under Rule 6(b)(2) of the Federal Rules of Civil Procedure."); *Motsinger v. Flynt*, 119 F.R.D. 373, 375 (M.D.N.C. 1988) (noting that "[m]otions for an extension of the service time made after the running of the 120-day period require a considerably greater showing of cause," but not suggesting that such motions could not be granted in an appropriate case); *Baden v. Craig-Hallum, Inc.*, 115 F.R.D. 582, 585–87 (D. Minn. 1987) (concluding that there was good cause for the failure to effect service within the 120-day period, and granting an extension even though plaintiff did not move for an extension within that period).

In *Peters v. Benways Transportation*, the plaintiff filed her complaint within the statute of limitations but failed to complete service upon the defendants within sixty days of filing. No. 2004-148 (Vt. Aug. 2004) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo04148.aspx. Her only request for an extension came in the form of a Rule 6(b)(2) motion, filed nine days after the statute of limitations had expired. The trial court granted the Rule 6(b)(2) motion and the plaintiff served the defendants within the extended time period. The defendants moved to dismiss, and the trial court granted the motion, ruling that the plaintiff could not use Rule 6(b)(2) to extend the statutory deadline. The Supreme Court panel affirmed, stating:

> Here, both the sixty-day period for service and the statute of limitations had passed before plaintiff sought an extension of time to serve defendants. Thus, plaintiff's lawsuit had not been perfected at the end of the applicable limitations period. Plaintiff's attempt to revive her complaint through a Rule 6(b)(2) motion is unavailing. She seeks to apply the rule to extend the statutory limitations period, but Rule 6(b) expressly limits its scope to enlarging the time provided by court rules or orders. See *Hammons v. Int'l Playtex, Inc.,* 676 F. Supp. 1114, 1118 (D. Wyo. 1988) (sixty-day period for service established by state court rule is integral part of statute of limitations, and Rule 6(b)(2) may not be used to circumvent statute of limitations); see also *Cuocci v. Goetting,* 812 F. Supp. 451, 453 (D. Vt. 1993) (plaintiffs' failure to timely serve complaint resulted in running of limitations period). We recognize that plaintiff could have filed her complaint one day before the limitations period had run and still had sixty days to serve defendants, but in this case the complaint was not perfected by timely service, and the complaint could not be revived after the statutory limitations period had expired.

However, the panel in *Peters* also stated that "even assuming Rule 6(b)(2) could be used to extend the statutory limitations period, plaintiff has utterly failed to demonstrate excusable neglect." That basis for affirmance is independent of the Rule 6(b)(2) question, and thus there was no need for the *Bessette* Court to overrule *Peters*.[5]

There was a similar independent basis for the results in *Hammons v. International Playtex, Inc.* (cited by the panel in *Peters*) and in *Gero v. Moore*, No. 416-9-06 Wmcv, 2007 WL 5826061 (Vt. Super. Ct. May 11, 2007) (Wesley, J.) (adopting the reasoning in *Peters*, but

---

[5] To the extent there is a need to reconcile *Peters* and *Bessette*, the court notes that the rationale in the section of *Peters* block-quoted above was that the scope of Rule 6(b) is limited to enlarging the time provided by court rules and orders. *Bessette* acknowledges that Rule 6(b) is limited to acts controlled by the procedural rules or by the court, but explicitly rejects the theory that an extension under Rule 6(b) impermissibly enlarges the limitation period. 2007 VT 42, ¶¶ 11–13.

decided before *Bessette*). In *Ostheimer v. Stark*—also cited by the Indian defendants—the trial court actually denied the plaintiff's Rule 6(b)(2) motion, and the Supreme Court panel did not need to opine on the effect of a properly granted Rule 6(b)(2) extension because it agreed with the trial court's conclusion that there had been no excusable neglect that would warrant one. No. 2003-349 (Vt. Jan. 2004) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo03349.aspx. Likewise in *Cuocci v. Goetting* (also cited by the panel in *Peters*), the court concluded that the failure to serve did not result from any excusable neglect, but was instead only "garden-variety oversight." 812 F. Supp. 451, 453 (D. Vt. 1993).[6]

In *Hutchins v. Lerch*, the plaintiff filed her complaint within the applicable limitations period, and, after failing to serve the complaint upon the Canadian defendant within the 60-day window, filed motions to enlarge the time to serve. No. 2005-172 (Vt. Oct. 2005) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo05-172.S.aspx. The trial court granted each of the motions to enlarge, and the plaintiff eventually completed service within the enlarged time. The defendant moved to dismiss the action, arguing that timely service within 60 days of filing was necessary to toll the statute of limitations. The trial court granted the motion, and the plaintiff appealed. The Supreme Court panel affirmed, citing *Fercenia* and going on to reason as follows:

> In light of the foregoing, the conclusion is inescapable that plaintiff's filing of the complaint was ineffective to toll the statute, which expired when plaintiff failed to effect timely service of process within sixty days of the filing. Although plaintiff asserts that her case is distinguishable because she requested and received several extensions of time to effect service, the argument is unpersuasive. As the trial court here observed, plaintiff cannot claim that she received permission to extend the statute of limitations or that she relied to her detriment on such rulings when the court, in granting the motions, was unaware of any statute of limitations issue. Plaintiff also relies on *Weisburgh,* one of the cases cited in *Fercenia,* where this Court—in holding that the plaintiff's complaint was time-barred for failure to effect service of process within the requisite time period—observed that "[n]o motion to enlarge the time for completing service under V.R.C.P. 6 was made within the period." *Weisburgh,* 136 Vt. at 595. We are doubtful whether this dicta in *Weisburgh* implies that a motion to enlarge time for service can actually enlarge the time prescribed by a statute of limitations, but note that plaintiff's motion here was not filed "within the period" for service of process. Accordingly, *Weisburgh* provides no basis to find that the complaint was timely.

---

[6] Notably, the only reason the *Cuocci* court articulated for its ruling was that excusable neglect was not present. The court did not suggest that, even if the failure had been the result of excusable neglect, the grant of a Rule 6(b)(2) motion would not toll the applicable statute of limitations.

9

Under the analysis above, this court finds that reasoning unpersuasive—neither *Fercenia* nor *Weisburgh* stand for the proposition that a properly granted Rule 6(b)(2) enlargement cannot make service timely for the purposes of the *Weisburgh* rule. Because *Hutchins* is not controlling precedent, the court declines to follow it. See V.R.A.P. 33.1(d) ("An entry order decision issued by a three-justice panel that is not published in the Vermont Reports may be cited as persuasive authority but shall not be considered as controlling precedent.").

The court concludes that its October 26, 2011 ruling was appropriate under Rule 6(b)(2), and that the Rule 6(b)(2) extension does make Mylan's service "timely" for the purposes of the *Weisburgh* rule. Accordingly, because timely service under the Rules was accomplished, the three-year limitations period established by 12 V.S.A. § 523 was tolled on November 30, 2009—the date that Mylan filed its First Amended Complaint. Having reached this conclusion, the court does not reach any of Mylan's other arguments on the topic of the statute of limitations.

II. Whether Counts III and VI against the Indian Defendants are Displaced by 9 V.S.A. § 4607(a)

The Indian defendants have a second basis—independent of the statute of limitations—upon which they seek dismissal of Counts III (interference with contract) and VI (unfair competition) against them. The Indian defendants contend that those two counts are predicated on the misappropriation of trade secrets, and are therefore entirely displaced by 9 V.S.A. § 4607(a).[7] In opposition, Mylan maintains that its tortious interference claim is not based on trade secret misappropriation, but is rather based on contract, and thus comes within § 4607(b)(1). Mylan also contends that Count III alleges *two* breaches: Dr. Govil's breach of his contractual duty not to disclose Mylan's trade secrets, but also his breach of his non-compete agreement. According to Mylan, Dr. Govil's breach of his non-compete agreement is unrelated to whether he disclosed or misused Mylan's information, and thus that portion of Count III comes within § 4607(b)(2). As to Count VI, Mylan maintains that its unfair competition claim is not premised upon misappropriation of trade secrets, but rather arises out of Dr. Govil's breach of his contract and fiduciary duties to Plaintiffs. The Indian defendants reply that only the use of

---

[7] Section 4607 of Title 9 provides as follows:

> (a) Except as provided in subsection (b) of this section, this chapter displaces conflicting tort, restitutionary, and any other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
>
> (1) contractual remedies, whether or not based upon misappropriation of a trade secret;
>
> (2) other civil remedies that are not based upon misappropriation of a trade secret; or
>
> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

10

Mylan's trade secrets could make Cadila's competition with Mylan unfair or Cadila's cooperation with Dr. Govil tortious.

The court cannot conclude that this count comes within § 4607(b)(1). It is true that the claim involves a contract—namely, the trade secrets and non-compete contract between Dr. Govil and Mylan. To the extent that Count III is asserted against the Indian defendants, however, they were not parties to that contract. The gist of Mylan's claim against the Indian defendants is that they hired Dr. Govil away from Mylan with knowledge that doing so would put Dr. Govil in breach of his contract. That is not a contract claim with contract remedies. It is (as the name of the cause of action suggests) a tort claim. The court therefore rejects Mylan's claim that Count III comes within § 4607(b)(1) because it is "based on contract."

However, to the extent that Count III involves a claim that the Indian defendants tortuously interfered with Dr. Govil's contract not to compete with Mylan, that claim is not "based upon misappropriation of a trade secret." 9 V.S.A. § 4607(b)(2). The alleged interference with that provision of the contract did not necessarily have anything to do with trade secrets. To the extent that Count VI involves alleged conduct that is similarly detached from trade secrets, it is also not barred by § 4607(a).

ORDER

Pankaj Patel, Sunil Roy, and Cadila Healthcare, Ltd.'s motion for judgment on the pleadings is denied.

Dated at Burlington this 9 day of August, 2012.

_____
Geoffrey W. Crawford
Superior Court Judge

11