Sandra Lee CHURCH, Plaintiff,

v.

**GRUNTAL & CO., INCORPORATED,
Herzfeld & Stern, Inc., and Maurice
Gross, Defendants.**

**No. 88 Civ. 516 (TPG).**

United States District Court,
S.D. New York.

Oct. 7, 1988.

John Steel, Tanner Propp Fersko & Sterner, New York City, for plaintiff.

Barry J. Mandel, Baer Marks & Upham, Philip G. Barber, Schulte Roth & Zabel, New York City, for defendants.

## OPINION

GRIESA, District Judge.

Plaintiff Sandra Church opened a securities account with Herzfeld & Stern, Inc. in July 1982. Maurice Gross, a Herzfeld account representative, managed the account. In September 1985 Gruntal & Co., Inc. bought the account pursuant to the purchase of some of Herzfeld's assets. Gross continued, following the purchase, to manage the account.

Plaintiff has brought this action against Herzfeld, Gross and Gruntal alleging violations of Section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b–5, RICO and New York State law.

Defendants Gruntal and Gross have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the RICO claim and pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14, to compel arbitration of all of plaintiff's claims, including the RICO claim if it is not dismissed.

The court is of the view that defendants' motion to dismiss the RICO claims should be held in abeyance pending further proceedings. Defendants' motion to compel arbitration is denied.

### Facts

Plaintiff opened her account at Herzfeld in July 1982 with Gross acting as account executive. In this capacity Gross was given full discretion to manage the account in accordance with plaintiff's investment objectives, which were steady income and conservative growth. The heart of plaintiff's complaint is that Gross failed to manage the account in this fashion. Plaintiff's allegations focus, in particular, on transactions made by Gross in the stocks of two companies for which Herzfeld acted as lead underwriter for the initial public offerings.

Herzfeld, and later Gruntal, as the firms actually handling the substantive management of plaintiff's account, were acting as "introducing brokers." In the course of conducting their business with plaintiff, both firms employed larger companies to act as "clearing brokers," responsible for record keeping and for settling trades.

While Herzfeld was managing the account from 1982 to September 1985, the Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation acted as clearing broker. When the account was transferred to Gruntal in September 1985, Pershing continued to act as the clearing broker and in late December 1985 and then on January 6, 1986, following the purchase, plaintiff signed two margin agreements with Pershing.

The Pershing agreements were sent to plaintiff by Gruntal. However, the agreements were signed only by plaintiff and Pershing. Paragraph 18 of each agreement provides for arbitration.

It is agreed that any controversy between us arising out of your business or this agreement, except for those disputes

between us arising under the federal securities laws which are or are held to be not-arbitrable as a matter of law, shall be submitted to arbitration....

The "between us" clearly refers to plaintiff and the clearing broker Pershing. Although other provisions of the agreements refer to the introducing broker Gruntal (pars. 1 and 17), the arbitration clause does not.

In mid–1987, subsequent to the signing of the Pershing agreements, Gruntal stopped using Pershing as its clearing broker for the account and began using another clearing broker, Regional. Plaintiff entered into a "Customer's Agreement" directly with Gruntal dated July 7, 1987. This agreement contained an arbitration clause in Paragraph 16.

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration.... Notwithstanding the foregoing, arbitration shall not be mandated on claims asserting violation(s) of the Federal securities/commodities laws.

*Discussion*

Although defendants Gruntal and Gross are not parties to the Pershing agreements, they maintain that they have a right to enforce the arbitration clause as third party beneficiaries. Gruntal and Gross rely on the Gruntal agreement as an alternative basis for arbitration, although this agreement presents the difficulty of containing language which, on its face, excludes arbitration of federal securities law claims. Gruntal and Gross argue that this restriction should be held to constitute mere notice of a repealed SEC requirement and not a substantive contractual clause creating binding rights on the parties to the contract.

Plaintiff disputes the application of the Pershing agreements, and with regard to the Gruntal agreement, asserts that only the RICO and state law claims are arbitrable, and even those only to the extent that they arose after the agreement was signed.

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, is the point of departure for deciding the issues before the court. The Act creates a body of substantive federal law governing agreements to arbitrate. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). In determining whether the parties entered into an arbitration agreement, and in determining the exact scope of that agreement, the court must apply the "federal substantive law of arbitrability." *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1984). In this case, the application of federal law requires nothing unusual. The law we are concerned with is contract law, and federal law in this area simply "comprises generally accepted principles of contract law." *Genesco Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir.1987).

In applying these principles the court must take into account the federal policy favoring arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941.

*The Pershing Agreements*

Plaintiff, in late 1985 and early 1986, entered into agreements with Pershing containing arbitration clauses. By their terms, these clauses only bound plaintiff and Pershing. The clauses made no mention of either Gruntal or Gross and no extrinsic evidence is suggested which would show an intent to benefit them as third party beneficiaries. Had plaintiff and Pershing intended the arbitration clauses to benefit Gruntal or Gross, this intent could have been expressed in the clauses. It was not.

The court holds that the Pershing agreements do not confer arbitration rights on Gruntal and Gross.

*The Gruntal Agreement*

The Gruntal Agreement contains a valid arbitration clause that binds plaintiff to arbitrate certain disputes with Gruntal and Gross. The issue before the court is the scope of the arbitration clause and whether the claims before the court come within its terms.

With regard to plaintiff's claims under Section 10(b) and Rule 10-5, some background is helpful. SEC Rule 15c2-2, 17 C.F.R. § 240.15c2-2, was adopted pursuant to the Supreme Court decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held invalid arbitration clauses in reference to disputes arising under the Securities Act of 1933. The rule stated that:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal Securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

In accordance with this rule, the arbitration clause in the Gruntal agreement stated that arbitration shall not be mandated "on claims asserting violation(s) of the Federal Securities/commodities laws."

■ However, the SEC rule has recently been repealed in light of *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), wherein the Supreme Court ruled that arbitration agreements were valid for disputes arising under the Securities Exchange Act of 1934. This would include Rule 10b-5 claims. *See, Villa Garcia v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 833 F.2d 545, 547 (5th Cir.1987). The issue raised by defendants' motion is whether the language in the arbitration clause is a binding substantive provision of the contract, or whether it should be considered mere notice of a then existing SEC rule, such notice now being of no effect following the repeal of the rule.

This issue has been examined in several recent cases, although it has not been considered by the Second Circuit. In *Brick v. J.C. Bradford & Company*, 677 F.Supp. 1251, 1254 (D.D.C.1987), the arbitration clause at issue contained the following language:

The following agreement to arbitrate does not apply to any controversy ... for which a remedy may exist pursuant to any expressed or implied right of action under the federal securities laws....

The court ruled that this language was an enforceable contract term.

Two other cases cited to the court have held otherwise. In *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741, 743 (S.D.N.Y.1987), the parties added an addendum to an arbitration agreement stating that arbitration was not required for "disputes ... under the federal securities laws." The court reasoned that this provision was prescribed by Rule 15c2-2, and that this rule did not create any substantive rights requiring arbitration of disputes under the federal securities laws, but rather was simply a notice requirement. As such, provision of the required notice could not act in a substantive fashion to prevent arbitration. *McCowan*, 682 F.Supp. at 744.

*De Kuyper v. A.G. Edwards & Sons, Inc.*, 695 F.Supp. 1367, 1368-69 (D.Conn. 1987), presented an arbitration clause very similar to the one contained in the Gruntal agreement. The court reasoned, as did the *McCowan* court, that Rule 15c2-2 created no substantive rights, but merely provided notice. As such, and in view of the fact that disclosure was mandatory, the court determined that the language exempting federal securities law disputes from arbitration could not be considered a "bargained-for term of the contract" and should not be applied.

This court finds the reasoning of *Brick* the more persuasive as applied to the present case. While the clause in the Gruntal agreement may have been inserted by Gruntal only for the purpose of complying with SEC Rule 15c2-2, there is no indication of this in the contract. The contract, which Gruntal drafted, makes no as-

sertion that the clause is mere notice, or that the clause would be made of no effect upon a change in federal law regarding arbitration of securities disputes. Nor is there any evidence presented that plaintiff was informed by Gruntal or Gross that the clause was intended as mere notice of an existing SEC rule which might be changed. Plaintiff, in reading the contract, had every reason to assume it meant what it said and to rely on it. Gruntal drafted the contract and Gruntal included the term. Plaintiff now has the right to require Gruntal to abide by that agreement.

Plaintiff's claims under Section 10(b) and Rule 10b-5 are excluded from arbitration under the Gruntal agreement.

### RICO and State Law Claims

■ The arbitration agreement signed by Gruntal and plaintiff in July 1987 would apply to both RICO and state law claims. The sole issue concerning the arbitrability of these claims is whether the clause applies retroactively to claims arising out of events which occurred prior to July 7, 1987, the date of the agreement. It is clear that plaintiff's claims arose prior to that date.

The operative language of the arbitration clause is:

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration....

This language, drafted by Gruntal, is very specific and circumscribed. Only those agreements "arising out of or relating to" the contract are to be arbitrated.

Gruntal and Gross have cited several cases applying arbitration agreements retroactively, to events occurring before the agreement was signed. *See, e.g., Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir.1982); *Clark v. Kidder, Peabody & Co., Inc.,* 636 F.Supp. 195, 197 (S.D.N.Y.1986); *Prestera v. Shearson Lehman Brothers, Inc.,* Fed. Sec.L.Rep. ¶ 92,884 at 94,288 [available on WESTLAW, 1986 WL 10095] (D.Mass. July 30, 1986); *Shotto v. Laub,* 632 F.Supp. 516, 523 (D.Md.1986). In each of these cases the arbitration clause contained language very different than the clause at issues. In *Belke,* the clause upon which the court relied upon stated:

It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration.

In applying this clause retroactively, the court explicitly based its holding upon the language applying arbitration to disputes arising not only out of the contract, but "out of your business."

The other three cases cited by Gruntal and Gross all involved language very similar to that at issue in *Belke.* The Gruntal agreement, however, contains no such language.

Plaintiff's RICO claims and claims asserted under state law should not be submitted to arbitration.

### Conclusion

Defendants' motion to dismiss the RICO claim is held in abeyance pending further proceedings in the case. Defendants' motion to compel arbitration is denied in its entirety.

SO ORDERED.