Casimir J. KADOW and Elaine J. Kadow, Husband and Wife, Plaintiffs,

v.

A.G. EDWARDS AND SONS, INC. and Jay Rumberger, Defendants.

No. Civ. 89–5069.

United States District Court, W.D. Arkansas, Fayetteville Division.

Sept. 13, 1989.

Michael H. Mashburn, Mashburn & Taylor, Fayetteville, Ark., for plaintiffs.

Thomas D. Stockland, Pettus Law Firm, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On June 2, 1989, Casimir J. Kadow and Elaine J. Kadow filed this cause of action against their securities broker, Jay Rumberger, and his employer, A.G. Edwards & Sons, Inc. (Edwards). The Kadows in July, 1986, sought the investment advice and brokerage services of the defendant. After suffering losses in their accounts, the plaintiffs brought this suit alleging, among other things, that defendants violated § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10(b)(5), 17 C.F.R. § 240.10b–5, promulgated thereunder. Plaintiffs further alleged violations of the Arkansas Securities Act.

Plaintiffs allege these violations occurred in connection with the investment of their funds in American Capital Government Securities, a mutual fund. The gravamen of the complaint is that defendants misrepresented American Capital in such a way as to lead plaintiffs to believe their principal investment was guaranteed by the United States Government. On the basis of an arbitration clause in an agreement executed by the parties in connection with plaintiffs' accounts, the defendants have moved to compel arbitration and to dismiss or stay proceedings pending arbitration pursuant to Sections 3 and 4 of the Federal Arbitration Act. 9 U.S.C. §§ 1–15 (1989).

When Mr. Kadow opened the plaintiffs' account, he executed a document referred to as an A.G. Edwards and Sons, Inc. IRA/SEP Adoption Agreement. The adoption agreement appears at the end of a new account card filled out by the parties and provides as follows:

I hereby adopt the A.G. Edwards & Sons Inc. Custodian Account Agreement; provided, that the Custodial Account Agreement shall be in force if, and only if, this Adoption Agreement is accepted below.

In witness whereof, I, the Depositor, hereby execute this Adoption Agreement, acknowledge receipt of and have read the Disclosure Statement, understand that there are fees for this account, and appoint A.G. Edwards & Sons Inc. to serve as Custodian in accordance with the terms and conditions of this Agreement on this _____ day of _____, 19__.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

Depositor's Signature: X Casimir J. Kadow

The foregoing Adoption Agreement is approved and accepted by A.G. Edwards & Sons, Inc. as Custodian this 7/22/88 day of _____, 19__.

By Branch Manager: Don Trumbo

Exhibit 1, Affidavit of Stephen G. Sneeringer.

Article XI, Paragraph 12 of the Custodian Agreement provides:

(12) Any controversy between the Depositor and the Custodian or any of the Custodian's officers, directors, agents, or employees, arising out of this Agreement or the performance or breach of this Agreement, or any account with the Custodian, or any transaction by the Depositor with or through the Custodian, or any other cause whatsoever, shall be settled by arbitration in accordance with the applicable state or federal arbitration statutes and in accordance with the rules of the American Arbitration Association, the National Association of Securities Dealers, Inc. or such securities exchange as the Depositor as applicable may elect. If the Depositor fails to notify the Custodian of such election in writing within five (5) days after receipt from the Custodian of a request for arbitration, then the Custodian may make such election on behalf of the undersigned. At least one of the arbitrators appointed to hear any controversy to be settled by arbitration shall be employed in the securities industry unless otherwise agreed prior to the

time of the arbitration. The award of any arbitrators appointed to hear any controversy to be settled by arbitration shall be employed in the securities industry unless otherwise agreed prior to the time of the arbitration. The award of any arbitrators appointed pursuant hereto shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction. *Arbitration cannot be compelled with respect to disputes arising under the federal securities laws.* (emphasis added).

Exhibit 2, Affidavit of Stephen G. Sneeringer. The position of the defendants is that the dispute is arbitrable pursuant to the above quoted provisions.

## I. *Arbitrability of Claims*

The Federal Arbitration Act, 9 U.S.C. §§ 1–15, creates a body of substantive federal law governing agreements to arbitrate. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). The act states arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The act further provides parallel devices for seeking the enforcement of arbitration clauses. Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. 9 U.S.C. § 3. Section 4 provides a method under which a party aggrieved by the failure or refusal of the other party to arbitrate may petition the federal court for an order compelling arbitration. 9 U.S.C. § 4.

As the Supreme Court cases cited herein indicate, there is a strong federal policy favoring arbitration. Arbitration agreements are to be vigorously enforced with due regard given to the federal policy favoring arbitration. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v. Mercu-*

*ry Construction Corp.*, 460 U.S. 1, 24, 105 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See also Rodriguez de Quijas v. Shearson/American Express, Inc.*, —— U.S. ——, —— - ——, 109 S.Ct. 1917, 1919–20, 104 L.Ed.2d 526 (1989). In fact, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25, 105 S.Ct. at 941.

■ Of course, "[a]n agreement to arbitrate is simply a contract, fashioned by the parties to their intentions. Although the Federal Arbitration Act establishes a presumption in favor of arbitrability when arbitrability is in doubt, it does not prevent parties from agreeing to exclude matters from arbitration if they so desire." *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 733 (3d Cir.1989), *citing, Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, —— U.S. ——, ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

## II. *State Law Claims*

The plaintiffs raise several objections to the enforceability of the arbitration clause. They contend the arbitration clause is unenforceable because the form contract created ambiguity by referring to another document with respect to a disclosure statement, fees, and appointment of the custodian without specific reference to a supplementary arbitration provision. In addition, plaintiffs deny they received the arbitration agreement referred to. Plaintiffs also contend the specific placement of the arbitration clause created an ambiguity.

The written contract signed by Mr. Kadow in a separate section provides "I hereby adopt the A.G. Edwards & Sons, Inc. Custodian Account Agreement; provided,

that the Custodial Agreement shall be in force if, and only if, this Adoption Agreement is accepted below." Below this statement the agreement states in bold print "[t]his contract contains a binding arbitration provision which may be enforced by the parties." Immediately below this, Mr. Kadow was required to separately sign the adoption agreement.

■ The court concludes there is no ambiguity which requires an evidentiary hearing. Parties entering into a contract have the duty to read the contracts before they sign them. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir. 1988). The mere incorporation of another document does not create an ambiguity. Thus, the court finds no basis to deny arbitration of the state law claims. Indeed, the Supreme Court has stated arbitration agreements encompassing state law claims must be enforced "even where the result would be the possible inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985).

### III. *The Federal Claims*

At the time the account agreement was executed, the enforceability of predispute arbitration under the Federal Securities Act of 1933 and the Federal Securities Exchange Act of 1934 was doubtful. In *Wilko v. Swan*, the Supreme Court had invalidated predispute agreements to arbitrate claims arising under the Securities Act of 1933. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) overruled by *Rodriguez De Quijas v. Shearson/American Express, Inc.*, — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The nonarbitrability rule was extended by the lower courts to claims arising under the Securities Exchange Act. *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 732 (3d Cir.1989). In accord with the position taken in *Wilko v. Swan*, the Securities Exchange Commission promulgated Rule 15c2–2, which provided as follows:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c–2(b) (1987). (Effective December 28, 1987). "The rule was enacted to ensure that brokers would not mislead customers into believing that they had no remedy in court when in fact they did." *Ketchum v. Almahurst Bloodstock IV*, 685 F.Supp. 786, 794 (D.Kan.1988), *quoting Steinberg v. Illinois Co., Inc.*, 635 F.Supp. 615, 617 (N.D.Ill.1986).

In order to comply with this rule, customer agreements were altered to include language excepting federal securities law claims from the predispute arbitration clauses. A form disclosure statement was provided by the SEC and stated as follows:

Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the Federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

C.F.R. § 240.15c2–2(b).

Because of subsequent developments, Rule 15c2–2 has been repealed. *See* SEC Exchange Act Release No. 25034 [1987 Transfer Binder] Fed.Sec.L.Rep. (CC4) par. 84, 163 (October 15, 1987); 52 Fed.Reg. 39, 216 (1987). The repeal of the rule was a direct result of the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In *McMahon*, the court held predispute arbitration agreements with respect to claims under the Securities Exchange Act were enforceable. Any doubt that the Supreme Court's rationale should be extended to claims under the 1933 Act has been resolved by the Court in *Rodriguez de Quillas v. Shearson/American Express*, — U.S. —, 109

S.Ct. 1917, 104 L.Ed.2d 526 (1989). In that case, the Supreme Court expressly overruled *Wilko* and held claims under the 1933 Act were arbitrable, as well as claims under the 1934 Act.

In light of the *McMahon* and *Rodriguez de Quijas* decisions, the enforceability of predispute agreements to arbitrate federal securities claims is no longer questionable. Thus, resolution of the present controversy turns upon the interpretation given to the contractual arbitration clause at issue here.

The question then becomes whether the contractual arbitration provision, as qualified, constitutes an agreement to arbitrate claims arising under the federal securities laws. Accordingly, the issue essentially reduces to the question of whether the emphasized language is a mere notice provision, or whether it reflects a substantive contractual right to litigate federal securities claims.

Although the Court of Appeals for the Eighth Circuit does not appear to have addressed this issue, various other courts have. However, each case turns on specific language involved. *See Ballay v. Legg Mason Wood Walker, Inc.* 878 F.2d 729 (3d Cir.1989). (Contract stating that "I am aware that this arbitration provision is not binding upon me in any dispute ... under the federal securities laws, and, in such cases, I may seek resolution through litigation in the courts." This language created the substantive right to litigate claims.); *Gooding v. Shearson Lehman Bros., Inc.,* 878 F.2d 281, 284 (9th Cir.1989). (Contract stating that "[t]his agreement to arbitrate does not apply to any controversy ... for which a remedy may exist ... under certain of the federal securities laws" excludes arbitration of federal claims.); *Giles v. Blunt, Ellis & Loewi, Inc.,* 845 F.2d 131, 132 (7th Cir.1988) (Arbitration not required when the contract states "I understand ... this agreement ... does not bar me from pursuing such claims based solely on alleged violations of the federal securities laws in a judicial forum rather than in arbitration.")

These and other cases refusing to compel arbitration have noted the contractual language excludes federal securities claims from arbitration in unmistakable terms indicating the customer is not compelled to arbitrate federal securities claims. *See* cases cited *supra. See also Gotshall v. A.G. Edwards & Sons, Inc.,* 701 F.Supp. 675 (N.D.Ill.1988); *Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465, 468 (S.D.N.Y. 1988); *Federal Insurance Co. v. Mallardi,* 696 F.Supp. 875, 879 (S.D.N.Y.1988). Other courts have reasoned the specific language involved merely provided notice or stated the parties understanding of the current status of the law. *Reed v. Bear, Stearns & Co., Inc.,* 698 F.Supp. 835, 840–41 (D.Kan.1988); *DeKuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367, 1368–69 (D.Conn.1987); *McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741, 743 (S.D.N.Y.1987).

Two other cases have dealt with an arbitration clause containing an identical disclosure sentence to the effect that "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws." In *Gotshall v. A.G. Edwards & Sons, Inc.,* 701 F.Supp. 675 (N.D.Ill.1988), the court found the reasoning of *Giles v. Blunt, Ellis and Loewi, Inc.,* 845 F.2d 131 (7th Cir.1988) persuasive and concluded the express language of the agreement must be upheld. The decision was based on the strength and plain language of the agreement. *Gotshall,* 701 F.Supp. at 677.

*DeKuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367 (D.Conn.1987) involved an arbitration clause containing the same disclosure sentence. The court concluded that "taken in the context of the arbitration clause as a whole, and given the fact that it (the disclosure sentence) represented a mandatory disclosure under Rule 15c2–2 of the SEC, it cannot be construed to be a separate clause of the contract.... It would defy logic to reason that the disclosure language of Rule 15c2–2 was a bargained-for term of the contract." *Id.* at 1368–69.[1]

---

**1.** Defendants have cited the following unreported cases which hold the exact language in the arbitration provision does not provide plaintiffs with a substantive right to prevent arbitration.

■ The court finds the reasoning of *Gotshall* to be more persuasive. Essentially, defendants argue the last sentence of the arbitration clause should not be given effect because it was never intended to provide an exception to the broad arbitration agreement covering all disputes; rather, the intent was merely to comply with the SEC notice requirements. The court does not doubt that the language was inserted by the defendant in an effort to comply with the SEC rule. However, there is no evidence that the parties intended the language to merely constitute a notice provision. As plaintiffs note, no matter the reason for the sentence's inclusion, the parties are now bound by it. *Reed v. Bear, Stearns & Co., Inc.*, 698 F.Supp. 835 (D.Kan.1988).

While the regulatory background is interesting and perhaps explains the reason for the presence of the qualifying language, the language of the agreement itself supplies no justification for looking beyond the agreement to the regulatory history. *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 734 (3d Cir. 1989). As the Third Circuit noted, "in any event, even if we were to look at the regulatory background we see no reason in it for rejecting customers' reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of the change in the law." *Id.* "The undisclosed intentions of the parties are … immaterial … the outward manifestation or expression of assent is controlling." *Gooding v. Shearson Lehman Bros., Inc.*, 878 F.2d 281, 284 (9th Cir.1989) (citations omitted). If defendants did not intend to be bound by the contractual language, they could have clearly indicated this was merely a notice provision or specifically tracked the language of the SEC disclosure notice. *See* 17 C.F.R. § 240.15c2–2(b) (1987) (*quoted su-*

*pra*). As such, there were readily available means of effectuating their intention.

A separate order in accordance herewith will be concurrently entered.

---

*Miazza v. A.G. Edwards and Sons, Inc.,* and *Earnest G. Martin, III,* No. S 88–0232(G) (S.D. Miss.1989); *McCausland v. A.G. Edwards and Sons, Inc.* and *George W. Bigelow,* No. 86–2389 (W.D.Penn.1989) and *Reed v. A.G. Edwards and Sons, Inc.* and *Earnest Martin, III,* No. S 85–1580(NG) (S.D. Miss.1988).