**James R. LEONARD, Plaintiff,**

v.

**STUART–JAMES COMPANY, INC., et al., Defendants.**

Civ. A. No. 1:89–CV–2051–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 23, 1990.

William E. Sumner, Sumner & Hewes, Atlanta, Ga., for plaintiff.

Rufus Thomas Dorsey, IV, Parker Hudson Rainer & Dobbs, Atlanta, Ga., Donald T. Trinen, Christa D. Taylor, Hart & Trinen, Denver, Colo., for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on defendant Stuart–James's motion to compel plaintiff to arbitrate, Stuart–James's motion to dismiss for failure to state a claim, and defendant Michael J. Whalen's motion to dismiss pursuant to Fed.R.Civ.P. 4(j). This complaint was filed September 11, 1989, and amended December 5, 1989, against the Stuart–James Company and Michael J. Whalen. Claims are asserted un-

der the Securities Act of 1933, the Securities Exchange Act of 1934, the Georgia Securities Act, Federal and State RICO, as well as state law claims of breach of fiduciary duty, breach of contract, and negligence. *See* First Amended Complaint.[1]

### I. MOTION TO COMPEL ARBITRATION

■ When plaintiff opened an investment account with Stuart–James in June 1987, he signed an agreement entitled "Customer Cash Account Agreement." This agreement had an arbitration provision, which provided as follows:

> The undersigned agrees that any and all claims which may arise by and between the undersigned and The Stuart–James Company, Inc. shall be submitted to arbitration as provided for in the Code of Arbitration Procedure regulated by the National Association of Securities Dealers, Inc. However, this paragraph does not prevent the undersigned from judicial recourse with respect to federal securities claims.

The defendant requests that this court compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* The defendant contends that the last section of that paragraph excepting the federal securities claims from arbitration was inserted merely because of the requirements of a Securities Exchange Commission rule, SEC Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (1987). This rule has since been rescinded because the law on arbitration has changed, and therefore the defendant says, it has not waived its right to arbitration of the federal securities claims. Plaintiff, on the other hand, argues that the contract specifically excludes federal securities laws from the arbitration provision, and the change in the law and the SEC rule is irrelevant.

It is clear that the arbitration provision covers all claims other than the federal securities claims, including the RICO, state, and common law claims. Therefore, those will be referred to arbitration pursu-

**1.** The original complaint asserted claims under Section 10(b) of the 1933 Act and Rule 10b–5, the Georgia Securities Act, fraud, deceit, breach of fiduciary duty, and negligence. The amendment added new factual allegations and other securities and RICO claims.

ant to the agreement and will be stayed in this court.

■ The Federal Arbitration Act provides for enforcement of privately negotiated arbitration agreements, which the court must rigorously enforce even if such enforcement results in piecemeal litigation. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–21, 105 S.Ct. 1238, 1241–43, 84 L.Ed.2d 158 (1985). The court's first task in analyzing a motion to compel arbitration "is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The court is to apply general state law principles of contract interpretation, with due regard given to the federal policy favoring arbitration, and ambiguities in the scope of the arbitration provision are resolved in favor of arbitration. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Parties are not obligated to arbitrate where they have not agreed to, and parties may exclude certain claims from the scope of their arbitration agreement. *Id.* The court must enforce the privately negotiated agreements in accordance with their terms. *Id.*

In the past federal securities claims were not arbitrable. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In connection with this legal climate, the Securities Exchange Commission promulgated Rule 15c22, which essentially provided that it was a fraudulent, manipulative or deceptive act or practice to purport to bind the customer to arbitration of disputes arising under the federal securities laws. The SEC rescinded this rule in 1987 following the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which held that pre-dispute agreements under the 1934 Act are enforceable. The Supreme Court has recently expanded on *McMahon* and overruled *Wilko,* holding that 1933 Act claims are also arbitrable. *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). There is no longer any legal impediment to arbitration of all federal securities claims.

The Eleventh Circuit has not addressed the issue presented in this case, where contract language drafted so as to comply with Rule 15c2–2 excepts federal securities claims from arbitration. However, many district courts and some appellate courts have addressed the issue. The clear consensus among these courts is that the language of the contract is the key to the analysis and controls whether arbitration must be compelled. The fact that the language was put into the contract pursuant to the rule is irrelevant when the language of the contract is plain. *Gooding v. Shearson Lehman Bros.,* 878 F.2d 281 (9th Cir. 1989); *Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729 (3d Cir.1989); *Stander v. Financial Clearing and Services Corp.,* 718 F.Supp. 1204 (S.D.N.Y.1989); *Amodio v. Blinder, Robinson & Co.,* 715 F.Supp. 32 (D.Conn.1989); *Kadow v. A. G. Edwards & Sons, Inc.,* 721 F.Supp. 201 (W.D.Ark.1989); *Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465 (S.D.N.Y.1988); *Brick v. J. C. Bradford & Co., Inc.,* 677 F.Supp. 1251 (D.D.C.1987). Where the language specifically excludes federal securities claims from the arbitration provision, arbitration is not compelled. *Ballay,* 878 F.2d at 729; *Gooding,* 878 F.2d at 281; *Kadow,* 721 F.Supp. at 201; *Church,* 698 F.Supp. at 465; *Brick,* 677 F.Supp. at 1251. Where the language provides notice only, or provides for a change in the law, arbitration has been compelled. *Scher v. Bear Stearns & Co., Inc.,* 723 F.Supp. 211 (S.D.N.Y.1989); *see* cases cited in *Stander,* 718 F.Supp. at 1204. Cases that look to the regulatory history are not persuasive, as they ignore the specific language of the contract at issue, which is the first step in determining whether arbitration should be compelled. *See Ottenritter v. Shearson Lehman Hutton, Inc.,* 727 F.Supp. 980 (D.Md.1989); *McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741 (S.D.N.Y. 1987), *appeal dismissed,* 889 F.2d 451 (2d Cir.1989); *Finkle & Ross v. A. G. Becker Paribas, Inc.,* 622 F.Supp. 1505 (S.D.N.Y. 1985).

The language in this case is somewhat different from every other case the court has read on this issue, but it is similar enough for cases to give guidance. The sentence which reads, "however, this paragraph does not prevent the undersigned from judicial recourse with respect to federal securities claims," creates an exception to arbitration and allows the plaintiff to have federal securities claims heard in a judicial forum. The language makes no reference to Rule 15c2–2, nor does it provide for potential changes in the law. *See Ballay,* 878 F.2d at 744; *Kadow,* 721 F.Supp. at 201; *Church,* 698 F.Supp. at 465. The fact that the rule was rescinded and the law was changed to encompass arbitration of all federal securities claims is irrelevant where the contract terms control in the first instance. The contract here provided an exclusion for federal securities claims, and therefore the court is unable to compel arbitration as to those claims. Those claims will proceed in this court.

In the event that the motion to compel was denied as to the federal claims, the defendant asked for a stay of those proceedings in this court pending arbitration for reasons of judicial economy. However, the Eleventh Circuit has rejected the judicial economy excuse as a reason for staying federal claims pending the arbitration of other claims. *Benoay v. Prudential–Bache Securities, Inc.,* 805 F.2d 1437, 1441 (11th Cir.1986) (citing *Byrd,* 470 U.S. at 217, 105 S.Ct. at 1240–41). Therefore, the court declines to stay the federal claims pending arbitration.

## II. DEFENDANT STUART–JAMES'S MOTION TO DISMISS

Defendant moved to dismiss the complaint, and following plaintiff's filing of the first amended complaint, moved to dismiss that complaint as well. Defendant seeks dismissal of the federal causes of action for failure to state a claim, failure to plead facts showing that the complaint was timely filed, and failing to state fraud with particularity required under Fed.R.Civ.P. 9(b).

The amended complaint, which is considered to be true on a motion to dismiss for failure to state a claim, *Blum v. Morgan Guaranty Trust Co.,* 709 F.2d 1463 (11th Cir.1983), reveals the following facts. On or about June 2, 1987 plaintiff opened an account with Stuart–James, in response to repeated urgings by defendant Whalen to invest in certain "penny stocks." Amended Complaint, ¶¶ 12–14. Plaintiff purchased securities in four companies in June and July 1987 after Whalen either contacted him by telephone or sent him a memorandum about the particular security. *Id.* at ¶¶ 17–34. On October 12, 1987 plaintiff decided to sell all his securities because Whalen's sales tactics were too aggressive and because Whalen was calling the plaintiff too frequently. *Id.* at ¶ 35. Whalen refused to sell the securities. *Id.* at ¶¶ 37–39. After this time, the market value of the stocks decreased, and Whalen sold the stocks during 1988, though securities from two companies could not be sold because their market value was zero. *Id.* at ¶¶ 45–47, 49–51, 55–57. Stuart–James refused to refund the value of the securities as of October 12 to the plaintiff. *Id.* at ¶ 53.

The complaint alleges that these losses were caused by Whalen's failure to carry out the sales order and defendant's misrepresentations and omissions. *Id.,* ¶ 57. Plaintiff contends that the defendants failed to disclose that there was a conspiracy to manipulate the market in these securities, and as part of the conspiracy they failed to execute the sales order. *Id.* at ¶ 59. Specifically, plaintiff contends that (1) the defendants failed to disclose or misrepresented that the magnitude of the "spread" between the bid and asked prices for the securities was such that potential for gain by Leonard was adversely affected; (2) Stuart–James dominated the market so that the resale price for the securities would not be established by open market forces; (3) increases in the price of the securities prior to the time plaintiff bought them were the result of arbitrary pricing and market manipulation by Stuart–James rather than the open market; (4) advice given to him was part of an orchestrated sales and trading program; (5) because of

Stuart–James's role as an underwriter or market-maker or its position as a principal in the securities, Stuart–James had an economic interest in the securities being heavily traded; (6) Stuart–James's business practices involved "crossing" stock as part of a scheme to inflate the price of the securities; (7) Whalen's sales commission far exceeded any potential profits in the investments, and (8) Stuart–James regularly conducted its business, including failing to execute sale orders, in violation of the rules and policies of the National Association of Securities Dealers. Complaint, ¶ 59(1)–(8).

A. *Section 12(2).*

■ To state a claim under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2),[2] the plaintiff must prove that the defendants sold or offered to sell a security by the use of the mails, or communication in interstate commerce, that the defendants misrepresented or omitted material facts, and that the plaintiff had no knowledge of any untruth or omission. *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 783 (11th Cir.1988).

Defendant argues that section 12(2), as part of the 1933 Act, applies only to initial offerings of securities, not to securities traded on the secondary market. *SSH Co., Ltd. v. Shearson Lehman Bros., Inc.*, 678 F.Supp. 1055 (S.D.N.Y.1987).[3] There is no allegation in the complaint that the stocks bought by plaintiff were initial issues. Few district courts and no appellate courts have addressed this issue. Though the language of section 12(2) does not limit its scope, the cases finding section 12(2) inapplicable to secondarily traded securities

rely on the purpose of the 1933 Act, to regulate the initial distribution of securities from the issuer, as opposed to the purpose of the 1934 Act, to regulate subsequent trading on the secondary market. *Strong v. Paine Webber, Inc.*, 700 F.Supp. 4 (S.D.N.Y.1988); *Ralph v. Prudential–Bache Securities*, 692 F.Supp. 1322 (S.D.Fla.1988); *SSH Co.*, 678 F.Supp. at 1055.

Plaintiff contends because he has alleged Stuart–James was a "market maker," the stocks would be offered in "batches" to its customers, and that the cited authority states that section 12(2) covers batch offerings. First, plaintiff has not presented a case where section 12(2) was applied to secondary trading. Second, to avoid the deficiency of not pleading a batch offering, plaintiff has not shown that "by definition" a market maker offers securities in a batch offering. See Plaintiff's Response to Defendant's Motion to Dismiss the First Amended Complaint at 5. Because the complaint does not allege that plaintiff bought the securities in an initial offering, the complaint fails to state a claim under section 12(2).[4]

■ Even if the complaint stated a claim under section 12(2), it does not allege any facts showing that the complaint was timely filed. Plaintiff contends that the complaint is timely under the discovery provision of the statute of limitations provided for section 12(2), section 13 of the 1933 Act, 15 U.S.C. § 77m. An action under section 12(2) must be brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of

---

**2.** *Any person who—*

. . . .

(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care

could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him,. . . .

15 U.S.C. § 77*l*.

**3.** Defendant is not arguing at this time that it is not a "seller" under the Supreme Court's definition of that term in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

**4.** Plaintiff also argues that the statute reaches oral communications. This misses the point of defendant's argument, which is that secondary trading is not covered by the statute.

reasonable diligence, but in no event more than three years after the security was offered to the public. The misrepresentations or omissions must necessarily have occurred before the sale of the securities in June and July of 1987. This action was filed in September 1989. On its face, then, the complaint is untimely.

Defendant's motion to dismiss Count I, the claim under section 12(2), is GRANTED.

B. *Section 10(b) of the Securities and Exchange Act of 1934.*

■ Plaintiff asserts a claim under section 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5. Defendant contends that Fed.R.Civ.P. 9(b) has not been complied with. Federal Rule of Civil Procedure 9(b) requires that circumstances constituting fraud or mistake must be stated with particularity. This rule alerts defendants to the precise misconduct with which they are charged and protects defendants from spurious charges. *Durham v. Business Management Associates,* 847 F.2d 1505 (11th Cir.1988). Plaintiff alleges that misrepresentations were made. No allegation describes specifically when, where, by whom, or specifically what that misrepresentation was. Defendant is entitled to a more definite statement as to the alleged misrepresentations allegedly made to plaintiff. The motion to dismiss is therefore granted with leave to amend to provide a more definite statement of these alleged misrepresentations.

■ Defendant also contends that the action is untimely. Under a 10(b) action, the statute of limitations is borrowed from the most analogous state statute of limitations. *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500 (11th Cir.1986). For Georgia, this is the statute of limitations found in the Georgia Blue Sky law, O.C.G.A. § 10–5–14(d). *Id.* This section prohibits an action filed more

than two years from the date of the contract for sale or the sale. Again, the complaint is untimely on its face, but plaintiff argues that it is not barred by the doctrine of equitable tolling. Though the statute of limitations is borrowed from state law, tolling is governed by federal law. *Durham,* 847 F.2d at 1508. No facts are alleged in the complaint that would bring the action within these tolling principles. Plaintiff will have an opportunity to cure this defect.

■ The elements of an action under section 10(b) and Rule 10b–5 are: (1) The defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages. *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989). Scienter can be shown by knowing misconduct or severe recklessness. *McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809 (11th Cir.1989). Reliance can be shown, in appropriate circumstances, by reliance on the open market, known as the "fraud on the market" theory. *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). Causation has two elements—transaction causation and loss causation. The misrepresentations must be a cause of the plaintiff's purchase of the securities (transaction causation) and also must be a proximate cause of the alleged loss (loss causation). *Currie,* 835 F.2d at 785.

The defendant argues that Whalen's mere refusal to sell the securities is not covered by section 10(b). This was argued and addressed in the first motion to dismiss and response, but plaintiff appears to have abandoned this theory.[5]

■ The defendant argues the allegations in paragraph 59 are not sufficient under a "fraud on the market" theory.[6]

---

**5.** Plaintiff, in response to the first motion to dismiss, argued that defendant's statement that it would execute sell orders when it would not, constituted a misrepresentation. Whether this tenuous theory is viable need not be decided at

this point, since the additional factual allegations present stronger theories of recovery.

**6.** Defendant contends ¶ 59 was lifted from another action, *Collier v. The Stuart-James Co., Inc.,* NO. 89–5055 (S.D.N.Y.). Though this may

However, the plaintiff has alleged a scheme or conspiracy that could be covered under section 10(b), or Rule 10b–5(a) or 10b–5(c).[7] It is clear that the plaintiff alleges that the defendant manipulated the market to inflate stock prices to his detriment. Complaint, ¶¶ 59, 67–73. Reliance is presumed to be based on the market. *Lipton*, 734 F.2d at 740; *see* Complaint, ¶ 71. Reckless disregard is alleged, ¶ 69. Transaction causation is alleged at paragraph 71, but loss causation does not appear to be alleged. Plaintiff will be allowed to amend to cure this deficiency as well. The defendant attacks the specific allegations of paragraph 59 as conclusory, not supported by facts, or illogical. These arguments are better addressed to a summary judgment motion. Taking the complaint as a whole the complaint does state a claim under section 10(b) and Rule 10b–5 other than the lack of allegation on loss causation.

The motion to dismiss Count II is GRANTED with leave to amend to allege facts showing that the 10(b) claim is timely, and showing loss causation.

C. *Controlling Person Liability.*

Count IV asserts a claim against Stuart–James for Whalen's violations of section 12(2) and section 10(b) under section 15 of the 1933 Act, 15 U.S.C. § 77*o*, and section 20 of the 1934 Act, 15 U.S.C. § 78t, as a controlling person. Because the complaint fails to state a claim under section 12(2), no section 15 claim is available. Likewise, as the section 10(b) claim is also dismissed, the section 20 claim must be dismissed. However, if plaintiff amends sufficiently to assert a section 10(b) claim, the section 20 claim will be reinstated.

### III. DEFENDANT WHALEN'S MOTION TO DISMISS

Whalen moves to dismiss the complaint against him because he was not served until February 14, 1989, 157 days after the complaint was filed and outside the 120–day period provided in Fed.R.Civ.P. 4(j). The plaintiff contends he had good cause for not serving Whalen in that time period, and argues that the late service should be held to be effective. The complaint in this action was filed September 11, 1989, and summons were issued on that date. Paragraph 9 of the complaint stated that Stuart–James may be served with process through its registered agent at C.T. Corporation Systems. Paragraph 10 of the complaint gave Whalen's residence address, and stated that he may be served with process at his principal place of business, Stuart–James at Clairmont Road in Atlanta, Georgia. The summons were issued with these addresses. Stuart–James was served through C.T. Corporation on September 12, 1989. *See* Civil Process Return, filed September 12, 1989. Stuart–James filed a motion to dismiss on September 26, 1989. The plaintiff's response to this motion to dismiss stated that it was a response to the motion to dismiss of both Stuart–James and Whalen. Defense counsel filed a motion for leave of absence October 19, 1989, and both the body of the motion and below his signature stated that he was counsel for Stuart–James and Whalen. The certificate of interested persons was filed by counsel on November 29, 1989, and listed Whalen as a party. Defense counsel was listed as counsel for "defendants." The plaintiff's first amended complaint was filed December 5, 1989, with a certificate of service to defendants' counsel. Plaintiff's counsel states that the complaint was served on defendants' counsel. Sumner Affidavit. Stuart–James requested an extension of time to respond to the amended complaint on December 19,

---

be true, the court is obligated to explore the sufficiency of the allegations to this case.

7  It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) to employ any device, scheme, or artifice to defraud,

. . . .
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

1989. The extension was granted, and Stuart–James moved to dismiss the amended complaint on January 26, 1990. Plaintiff's response to this motion to dismiss recognized that the movant was only Stuart–James. The civil process return showing that Whalen was served was filed on February 21, 1990, showing service on February 14, 1990 at 3483 Satellite Boulevard, Duluth, Georgia. On March 5, 1990 Stuart–James' counsel entered an appearance as counsel for Whalen, and filed this motion to dismiss.

Fed.R.Civ.P. 4(j) provides,

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

■ Once service is challenged, the burden is on the plaintiff to show good cause for failure to serve. *Norlock v. City of Garland*, 768 F.2d 654 (5th Cir.1985). Plaintiff raises five arguments to show good cause. First, plaintiff argues that the failure to serve was due to the negligence of the process server, plaintiff's counsel believed that Whalen had been served along with Stuart–James in September 1989, and that the pleadings filed by "defendants'" counsel reinforced that belief. Second, plaintiff claims the defendant waived objections to service by filing documents in this case. Third, plaintiff contends that service of the amended complaint on defendants' counsel effected service on defendant, or in any event, defendant was served within 120 days of filing the amended complaint. Fourth, plaintiff argues that his good faith attempts at settlement show good cause. Last, plaintiff argues that the defendant had notice of the action and has not shown any prejudice.

Though good cause is not defined in the rule, case law has made it clear that good cause requires some diligence by plaintiff and is more than inadvertence of counsel or half-hearted attempts at service. *Geiger v.*

*Allen*, 850 F.2d 330, 333 (7th Cir.1988); *Braxton v. United States*, 817 F.2d 238, 242 (3d Cir.1987).

■ Plaintiff's first argument is that he believed Whalen had been served with Stuart–James. He directed the process server to serve Whalen, but she believed she could serve both by serving C.T. Corporation. Also, defense counsel's filing the motion for leave of absence and certificate of interested persons as Whalen's counsel as well as Stuart–James's, led plaintiff's counsel to believe that Whalen was served and participating in this case. Unfortunately, counsel could not have a reasonable belief that Whalen had been served based on the civil process return, as the return showed service only on C.T. Corporation. Plaintiff's own complaint states that Whalen could be served at his place of business. Reliance, if any, on the motion for leave of absence and certificate of interested persons is not sufficient, since Whalen did not file an answer, a responsive motion, or any other pleadings in this action. The first motion to dismiss was filed for Stuart–James only, as is plain from the face of the motion. This argument is no more than an attempt to explain counsel's inadvertence and "lack of oversight" of the process server. *Braxton*, 817 F.2d at 242. As in *Braxton*, that inadvertence is not sufficient to demonstrate good cause.

Plaintiff relies on a recent decision of this court, *Smith v. Sentry Insurance*, 674 F.Supp. 1459 (N.D.Ga.1987) (Forrester, J.) to avoid dismissal because of the negligence of the process server. In that case, however, the return of service was inaccurate, so the negligence of the process server was not apparent and was not known to counsel. This is significantly different from this case, where it was plain from the face of the return of service that Whalen had not been served, and it was clear from the course of this action that Whalen was not participating.

■ Plaintiff next argues that Whalen has waived any objection to service by filing documents in this action without raising his objections to the service. Service of process is a jurisdictional requirement. *Pardazi v. Cullman Medical Center*, 896 F.2d 1313, 1317 (11th Cir.1990). The court

has no power over a person without proper service of process. Like the defense of personal jurisdiction, the defense of insufficient service of process can be waived based on Rule 12(h)(1) if not raised in the defendant's answer or first responsive pleading. *Id.* In this case, there was no service on Whalen until February 1990, and Whalen raised the defense in his first responsive pleading, the motion to dismiss. Whalen's failure to object previously is not noteworthy. Whalen had not been served and therefore was not a party to this action, the court had no jurisdiction over him and he had nothing to object to. Stuart–James is a different party, and has no reason to object to service on another party or notify plaintiff of his oversight. The fact that counsel indicated he was representing both Stuart–James and Whalen in two relatively insignificant documents does not rise to the level of a general appearance that would constitute waiver of this defense.

■ The amended complaint was served on defendants' counsel. Plaintiff argues that this is sufficient service under Rule 5. Rule 5 specifically allows service on a party's attorney of documents including "every pleading *subsequent* to the original complaint." Rule 5(a), (b) (emphasis added). The original complaint cannot be served under Rule 5. Service under Rule 4 is not avoided by service on a party's attorney, as service on an attorney is ineffective unless he has been authorized to accept service of process. *Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092 (2d Cir.1990). Therefore, service on counsel of the amended complaint did not constitute service of process sufficient under Rule 4.

■ The amended complaint was served on Whalen within 120 days of its filing, however. Plaintiff had a right under Rule 15(a) to amend his complaint. That amendment did not add Whalen as a defendant, as he was named as a defendant in the original complaint. Courts that have addressed the situation, where the original complaint was not served but an amended complaint was served, have found that service of the

amended complaint did not effect service when the original complaint had not been served. *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir.1987); *Bryant v. Brooklyn Barbeque Corp.*, 130 F.R.D. 665 (W.D. Mo.1990); *Blose v. Winnebago County*, No. 87–C–20248 (N.D.Ill. October 7, 1988) (available on Westlaw at 1988 WL 124927); *Baden v. Craig–Hallum, Inc.*, 115 F.R.D. 582, 586 n. 3 (D.Minn.1987). The logic of these cases is clear—if an amendment were allowed to substitute for the original for service, plaintiffs would have no incentive to serve the original complaint within the 120–day period. Therefore, even though the amended complaint was served within 120 days of its filing, service is not sufficient.

■ Plaintiff's last two arguments are meritless. The fact that plaintiff was attempting to settle with defendants does not show good cause why the complaint was not served on Whalen within the 120–day period. The plaintiff relies on *Assad v. Liberty Chevrolet, Inc.*, 124 F.R.D. 31 (D.R.I.1989). The magistrate found that good cause was shown because settlement with one defendant would negate the need to serve the other defendants. That showing has not been made in this case. The fact that the defendant had notice of the action, either before or after the 120–day period, is irrelevant. *Geiger*, 850 F.2d at 332; *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304 (5th Cir.1985); *Baden*, 115 F.R.D. at 586 n. 4. Prejudice to the defendant is also irrelevant, under the language of the statute, the legislative history and case law. *Bryant*, 130 F.R.D. 665; *In re City of Philadelphia Litigation*, 123 F.R.D. 515 (E.D.Penn.1988); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 650 (N.D.Fla.1988); *Boykin v. Commerce Union Bank*, 109 F.R.D. 344 (W.D.Tenn.1986).[8]

Therefore, plaintiff has failed to show good cause why Whalen was not served within 120 days of the filing of the complaint. Dismissal without prejudice is mandatory under Rule 4(j). Defendant Whalen is hereby DISMISSED from this action for failure to effectuate service of process.

---

**8.** Also, the fact that the statute of limitations may have run is irrelevant to the operation of

Rule 4. *Santos,* 902 F.2d 1092; *Geiger,* 850 F.2d at 334; *Winters,* 776 F.2d at 1307; *Norlock,* 768

## IV. CONCLUSION

Stuart–James's motion to compel arbitration is GRANTED in part and DENIED in part. The parties are DIRECTED to proceed with arbitration in accordance with the terms of the agreement for all claims except the federal securities claims. The arbitration proceedings shall be held in this district. Pursuant to 9 U.S.C. § 3, the court STAYS all proceedings on the non-federal securities claims (Counts III and V–XVI) pending the outcome of arbitration. Proceedings on the federal securities claims will continue in this court, and defendant's alternative motion for a stay of those claims is DENIED.

Stuart–James's motion to dismiss is GRANTED, dismissing Counts I, II and IV, with leave for plaintiff to file an amendment of Count II and IV within twenty (20) days of receipt of this order.

Defendant Whalen's motion to dismiss for failure to effect service is GRANTED.

SO ORDERED.

F.2d 654; *Wei v. State of Hawaii,* 763 F.2d 370, 372 (9th Cir.1985).